Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/15/2022 12:09 AM CDT

State of Nebraska, appellee, v.
Brandon L. Blake, appellant.
___ N.W.2d ___

Filed January 28, 2022.    No. S-20-779.

1. **Jurisdiction: Appeal and Error.** A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion independent from the lower court's decision.

2. **Sentences: Appeal and Error.** A sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion by the trial court.

3. **Judges: Words and Phrases.** A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition.

4. **Effectiveness of Counsel: Records: Appeal and Error.** The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved on direct appeal; the determining factor is whether the record is sufficient to adequately review the question.

5. **Effectiveness of Counsel: Records: Proof: Appeal and Error.** The record is sufficient to resolve on direct appeal a claim of ineffective assistance of counsel if the record affirmatively proves or rebuts either deficiency or prejudice with respect to the defendant's claims.

6. **Effectiveness of Counsel: Pleas: Waiver.** A voluntary guilty plea or plea of no contest generally waives all defenses to a criminal charge; thus, when a defendant pleads guilty or no contest, he or she is limited to challenging whether the plea was understandingly and voluntarily made and whether it was the result of ineffective assistance of counsel.

7. **Statutes: Appeal and Error.** The mode and manner of appeal is statutory, and a litigant who complies with the requirements of the applicable

statute is entitled to a review of the case to the extent of the scope provided by law.

8. **Courts: Statutes: Legislature.** It is not the function of the courts to make statutory law, but instead to interpret such laws devised by the Legislature.

9. **Constitutional Law: Statutes: Jurisdiction: Time: Appeal and Error.** The appellate jurisdiction of a court is contingent upon timely compliance with constitutional or statutory methods of appeal.

10. **Affidavits: Time: Appeal and Error.** The timing of the appellant's execution of the poverty affidavit is not fundamental to the concept of an "affidavit" set forth in Neb. Rev. Stat. § 25-2301.01 (Reissue 2016).

11. **Affidavits: Time: Fraud.** The staleness of the execution of the poverty affidavit is a relevant consideration by the district court and a proper basis for an objection under Neb. Rev. Stat. § 25-2301.02 (Reissue 2016), which shall be made within 30 days after the filing of the application or at any time if the ground for the objection is that the initial application was fraudulent.

12. **Sentences.** When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime.

13. ____. The sentencing court is not limited to any mathematically applied set of factors, but the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.

14. **Postconviction: Effectiveness of Counsel: Final Orders: Appeal and Error.** When a postconviction motion alleges a claim of ineffective assistance based on counsel's failure to file a direct appeal, which, alongside other claims of ineffective assistance of counsel, requests as relief a new direct appeal, the district court must first address the claim that counsel was ineffective for failing to file a direct appeal and enter a final order on that claim only.

15. **Effectiveness of Counsel: Proof.** To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.

16. **Sentences: Evidence: Presentence Reports: Presumptions: Appeal and Error.** Absent affirmative evidence to the contrary, an appellate court will presume that the sentencing court fulfilled its statutory

obligation to give a presentence investigation report due consideration, whether or not any particular aspect of the report was highlighted by defense counsel.

17. **Effectiveness of Counsel: Appeal and Error.** When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. Otherwise, the ineffective assistance of trial counsel issue will be procedurally barred.

18. **Postconviction: Effectiveness of Counsel: Appeal and Error.** The necessary specificity of allegations of ineffective assistance of trial counsel on direct appeal for purposes of avoiding waiver requires, at a minimum, allegations of deficient performance described with enough particularity for an appellate court to make a determination of whether the claim can be decided upon the trial record and also for a district court later reviewing a potential petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court.

19. **Effectiveness of Counsel: Appeal and Error.** Assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity.

20. **Effectiveness of Counsel: Witnesses: Appeal and Error.** When the claim of ineffective assistance on direct appeal involves uncalled witnesses, vague assertions that counsel was deficient for failing to call "witnesses" are little more than placeholders and do not sufficiently preserve the claim. However, the appellate court does not need specific factual allegations as to what the person or persons would have said, which will not be found in the appellate record.

21. **Appeal and Error.** Where an appellant's brief contains conclusory assertions unsupported by a coherent analytical argument, the appellant fails to satisfy the requirement that the party asserting the alleged error must both specifically assign and specifically argue it in the party's initial brief.

22. **Claims.** A claim insufficiently stated is no different than a claim not stated at all.

23. **Rules of the Supreme Court: Appeal and Error.** When a party fails to follow the rules of the Nebraska Supreme Court, an appellate court may proceed as though the party had failed to file a brief or, alternatively, may examine the proceedings for plain error.

24. **Appeal and Error.** An argument that does little more than restate an assignment of error does not support the assignment, and an appellate court will not address it.

25. **Effectiveness of Counsel.** Counsel is not deficient for failing to file a
    meritless motion.
26. **Effectiveness of Counsel: Motions to Suppress: Appeal and Error.**
    Allegations on direct appeal of ineffective assistance of trial counsel for
    failing to make a motion under some broad category, such as a motion
    to suppress or a motion to quash, without more detail as to the subject
    of and grounds for the motion, are, like claims for failing to investigate
    or call "witnesses," mere placeholders.

Appeal from the District Court for Lancaster County:
Andrew R. Jacobsen, Judge. Affirmed in part, and in part
vacated.

Darik J. Von Loh, of Hernandez Frantz, Von Loh, for
appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss
for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke,
Papik, and Freudenberg, JJ.

Freudenberg, J.

## I. INTRODUCTION

In a new direct appeal, the defendant raises claims that his
sentence was excessive and that his plea and sentence were
the result of ineffective assistance of trial counsel. The State
asserts we lack jurisdiction over the appeal. The defendant's
notice of appeal, motion to proceed in forma pauperis, and
poverty affidavit were all filed within 30 days after the final
order granting the new direct appeal, as set forth by statute.[1]
The district court granted the application to proceed in forma
pauperis, and § 29-2306 provides in part: "If an application
to proceed in forma pauperis is filed and granted, the Court
of Appeals or Supreme Court shall acquire jurisdiction of the
case when the notice of appeal is filed with the clerk of the
district court." However, the State points out that the poverty

---

[1] See Neb. Rev. Stat. §§ 25-2301.01 and 29-2306 (Reissue 2016).

affidavit had been executed by the defendant more than 45 days before the filing of the notice of appeal and, Neb. Ct. R. App. P. § 2-101(B)(4) (rev. 2015), in effect at the relevant time period, stated:

> The clerk of the district court shall within 2 business days of receipt of a notice of appeal send the following items to the Clerk of the Supreme Court:
>
> . . . .
>
> (4) [A] copy of the application to proceed in forma pauperis and accompanying poverty affidavit which has been executed no more than 45 days prior to the filing of notice of appeal[.]

## II. BACKGROUND

Brandon L. Blake presents a new direct appeal from his plea-based conviction and his sentence for attempted sexual assault in case No. CR 19-527. Blake's appellate counsel is different from his trial counsel.

### 1. POSTCONVICTION PROCEEDINGS

In pro se motions filed February 11, 2020, Blake alleged his plea in case No. CR 19-527 was the result of ineffective assistance, that counsel was ineffective in failing to present mitigating evidence at sentencing relating to Blake's mental health, and that his attorney denied him his right to effective assistance of counsel by refusing his request to file a direct appeal. He asked for appointment of counsel.

The State summarized these allegations as presenting two claims: whether counsel was ineffective for failing to uncover and present evidence of Blake's mental health and whether counsel denied Blake his right to a direct appeal. The State argued that the trial record affirmatively showed trial counsel was not ineffective on the first claim but that it was insufficient to determine the second claim.

Following a hearing, the court ordered, on June 12, 2020, that counsel be appointed for Blake with respect to his claim that he was deprived of his direct appeal. The court scheduled

a limited evidentiary hearing on that claim. The court reserved its ruling on Blake's other ineffective assistance claim and reserved its ruling on a motion by the State to deny that claim without an evidentiary hearing.

The evidentiary hearing on the claim for a new direct appeal was held on August 19, 2020. At the hearing, Blake's postconviction counsel submitted the deposition of trial counsel, who answered questions pertaining to Blake's advisement of his right to appeal and any request made by Blake to appeal in case No. CR 19-527.

After the hearing, the court ruled, on October 2, 2020, that Blake's trial counsel was deficient in denying Blake his right to a direct appeal, of which Blake had not been advised. The court granted as relief a new direct appeal. The court then "denied" the remaining issues raised by Blake's motion for postconviction relief without an evidentiary hearing.

On October 27, 2020, Blake timely filed with the district court his notice of appeal for purposes of his new direct appeal; this notice was filed within 30 days after the court's order granting such postconviction relief.[2] Blake filed with the district court his application to proceed in forma pauperis on October 27, also within 30 days after the order. Blake filed with the district court his poverty affidavit on October 30, within 30 days after the order. The affidavit reflects it was signed by Blake and notarized on July 2, which was 117 days before Blake filed his notice of appeal. The State did not file an objection under Neb. Rev. Stat. § 25-2301.02 (Reissue 2016), raising the staleness of the poverty affidavit or any other issue. The district court granted Blake's motion to proceed in forma pauperis, issuing an order on October 30, stating that Blake may proceed with his appeal in forma pauperis, with all associated costs to be borne by Lancaster County.

In November 2020, the Nebraska Court of Appeals granted the State's motion to summarily dismiss Blake's new direct appeal based on our appellate rule, § 2-101(B)(4):

---

[2] See *State v. Murphy*, 15 Neb. App. 398, 727 N.W.2d 730 (2007).

The clerk of the district court shall within 2 business days of receipt of a notice of appeal send the following items to the Clerk of the Supreme Court:

. . . .

(4) [A] copy of the application to proceed in forma pauperis and accompanying poverty affidavit which has been executed no more than 45 days prior to the filing of notice of appeal[.]

The Court of Appeals noted that Blake's affidavit was executed more than 45 days before the filing of the notice of appeal. Another poverty affidavit was filed on December 4, which was executed by Blake on November 21.

In February 2021, the Court of Appeals granted Blake's motion for rehearing. In his brief in support of the motion, he argued that the appellate rule referring to the timing of the execution of the poverty affidavit was not jurisdictional, because such timing requirement for execution is found nowhere in the statutes governing appellate jurisdiction and the right of appeal in Nebraska is purely statutory. The Court of Appeals reinstated Blake's new direct appeal and directed the parties to brief the question of jurisdiction. Pursuant to our authority to regulate the dockets of the appellate courts, we moved the appeal to our docket.

## 2. Underlying Proceedings

The record shows that Blake was originally charged in case No. CR 19-527 with first degree sexual assault, in violation of Neb. Rev. Stat. § 28-319(1)(a) and (b) (Reissue 2016), with a sentencing range of 1 to 50 years' imprisonment. The charge stemmed from an incident that occurred between May 24, 2012, and February 13, 2013, in which Blake subjected the victim to sexual penetration without the victim's consent or when Blake knew or should have known the victim was mentally or physically incapable of resisting or appraising the nature of his conduct.

Pursuant to a plea agreement, the charge was reduced to attempted first degree sexual assault, in violation of

§ 28-319(1)(c) and Neb. Rev. Stat. § 28-201(4)(b) (Cum. Supp. 2014), with a sentencing range of 0 to 20 years' imprisonment. The amended information for case No. CR 19-527 is not in the transcript.

Under the plea agreement, Blake also agreed to plead no contest in case No. CR 19-914 to an assault charge stemming from an incident while in jail. And the State agreed to dismiss a second charge for a different assault Blake had committed while in jail.

(a) Factual Basis and Acceptance of Plea

The factual basis for the plea in case No. CR 19-527 described that the victim, while he was in fifth or sixth grade, attended school with Blake, who at the time was in a high school grade. They were friends. One day at lunchtime, Blake threatened the victim to make him stay outside. Blake and the victim then went to a nearby wooded area, where Blake told the victim to pull down his pants and bend over.

The victim complied, Blake put his penis in the victim's anus, and afterward, Blake used a pocketknife to make several shallow cuts on the victim's back. Blake told the victim he would kill him if he told anyone what Blake had done. A staff member found the two in the wooded area after they were fully dressed. Both acted as if nothing was wrong.

When the sexual assault was finally disclosed in 2018, the scars on the victim's back were still visible. The victim and Blake exchanged correspondence while Blake was in jail between October 2018 and January 2019, in which the victim confronted Blake about the assault and Blake apologized. In one letter, Blake wrote, "I had a knife to make you give me what I wanted. It was wrong, I see that now but then I didn't care who I hurt as long as I got what I wanted." Blake admitted to sending the letters.

Before accepting the pleas, the court reviewed with Blake in detail each prescription medication he was taking. Blake affirmed that he understood the charges and that defense

counsel had discussed with him all the possible defenses he might have if he were to instead go to trial. Blake stated that he believed his attorney was competent and that he was satisfied with the job she had been doing. Following a plea colloquy, the court accepted Blake's pleas.

### (b) Sentencing

The presentence investigation (PSI) report considered by the court prior to sentencing was 400 pages. It showed as Blake's adult criminal history a recent conviction in another case, case No. CR 18-846, for attempted first degree sexual assault, the conviction for assault in case No. CR 19-914 that was part of the plea bargain agreement, two prior convictions for third degree assault, and a conviction for disturbing the peace.

Blake had earned his diploma through the GED program and completed a "DBT skills program" while incarcerated. A review of misconduct reports showed Blake "routinely violates the rules." Blake described himself as a "sex addict." However, he denied having committed the attempted sexual assault for which he was being sentenced.

The PSI report demonstrated that Blake has been diagnosed with adjustment disorder, adolescent antisocial behavior, mood disorder, "ADHD," borderline intellectual functioning, post-traumatic stress disorder, schizophreniform disorder, and oppositional defiant disorder. An evaluation completed in November 2019 showed Blake was in the "very high or high-risk range" to reoffend.

The PSI report showed Blake had become a state ward at the age of 9. Blake reported he was physically abused by his father and had experienced sexual abuse in some of his out-of-home placements. Before his removal from his parents' home, Blake "walked in on [his parents] having sex 'all the time,'" because they did not lock their door and he did not have his own room.

In his placements as a juvenile, Blake had a history of inappropriate sexual behavior toward younger peers. This

included stealing underwear, "grooming," writing inappropriate letters, attempting to be alone with younger peers, and attempting to put his penis through vent holes between rooms. This behavior included an incident where he smeared feces in the shower so it would drop onto a younger peer's head. Blake was hospitalized on numerous occasions for mental health reasons. His intelligence quotient is in the average range.

At the sentencing hearing held in December 2019, defense counsel affirmed that she had reviewed the PSI report and stated that she was not aware of any additions, corrections, or deletions that needed to be made to the report. Blake stated that he was given the opportunity to discuss the PSI report with defense counsel and did not require any more time to do so. He did not know of anything that needed to be added, corrected, or taken out of the report.

Defense counsel pointed out that Blake was only 25 years old at the time of sentencing and was 18 years old at the time of the crime. Defense counsel acknowledged that Blake was evaluated to be at a high risk to reoffend, but pointed out that he was still a young person and had been working with mental health services. Defense counsel highlighted that the PSI report showed Blake was involved with the Department of Health and Human Services throughout his youth, "has suffered from a number of mental health issues," and was making efforts to improve by "working with the mental health people in the Lincoln Correctional Center on his issues."

The State asked the court to consider that a weapon and the use of force was a part of the crime under consideration. Additionally, the State asked the court to take into account that the victim was only 11 or 12 years old when Blake attempted to sexually assault him.

On December 6, 2019, the court sentenced Blake to 9 to 14 years' imprisonment, to be served consecutively to the sentence under case No. CR 19-914 of 18 to 36 months' imprisonment and any other sentence previously imposed. The court explained that imprisonment was necessary for the protection

of the public because the risk is substantial that, during any period of probation, Blake would engage in additional criminal conduct. Further, a lesser sentence would depreciate the seriousness of his crimes and promote disrespect for the law.

### (c) Prior Conviction in Case No. CR 18-846

Trial counsel did not file a direct appeal. At the evidentiary hearing on Blake's postconviction motion seeking a new direct appeal for case No. CR 19-527, the court received into evidence the orders, minute entries, and transcription of the hearings in case No. CR 18-846, Blake's prior plea-based conviction of attempted first degree sexual assault. He entered his plea in case No. CR 18-846 approximately 9 months before he entered his plea in case No. CR 19-527. The court in case No. CR 18-846 had conducted a competency hearing before accepting Blake's plea. The court determined Blake to be competent. The discussion at the hearing reflects that the psychological examiner found Blake to be competent and that both Blake and his attorney assured the court of his competency.

The factual basis for the plea consisted of reports by the victim, who was 14 years old at the time, that between January and March 2018, Blake had penile-vaginal intercourse with the victim five or six times. The victim described that she was not comfortable having intercourse with Blake but that she did not stop him because she was scared. During one of the encounters, the victim's 14-year-old friend was in the room. In April 2018, the victim began receiving threats from Blake through social media. The court sentenced Blake to 13 to 18 years' imprisonment.

### III. ASSIGNMENTS OF ERROR

Blake assigns that the district court imposed an excessive sentence for his conviction of attempted first degree sexual assault in case No. CR 19-527. Blake assigns that his trial counsel was ineffective in case No. CR 19-527 when she did not (1) present evidence regarding Blake's mental capacity, (2) properly investigate Blake's claims by interviewing certain

named witnesses and getting statements from them, (3) pursue a motion to quash the information or motion to suppress statements and evidence taken from Blake during the course of the investigation of the allegations contained in the information, or (4) present evidence of Blake's childhood background of physical and sexual abuse.

## IV. STANDARD OF REVIEW

[1] A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion independent from the lower court's decision.[3]

[2,3] A sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion by the trial court.[4] A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition.[5]

[4,5] The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved on direct appeal; the determining factor is whether the record is sufficient to adequately review the question.[6] The record is sufficient to resolve on direct appeal a claim of ineffective assistance of counsel if the record affirmatively proves or rebuts either deficiency or prejudice with respect to the defendant's claims.[7]

[6] A voluntary guilty plea or plea of no contest generally waives all defenses to a criminal charge; thus, when a defendant pleads guilty or no contest, he or she is limited to

---

[3] *McEwen v. Nebraska State College Sys.*, 303 Neb. 552, 931 N.W.2d 120 (2019).

[4] *State v. Greer*, 309 Neb. 667, 962 N.W.2d 217 (2021).

[5] *Id.*

[6] *State v. Wood, ante* p. 391, 966 N.W.2d 825 (2021).

[7] *Id.*

challenging whether the plea was understandingly and voluntarily made and whether it was the result of ineffective assistance of counsel.[8]

## V. ANALYSIS

### 1. Jurisdiction

We first address the State's contention that we lack jurisdiction over Blake's new direct appeal. The State argues we have no appellate jurisdiction over this case because the poverty affidavit Blake filed with the district court as part of his application to proceed in forma pauperis, which was granted by the district court without any objection below, was executed more than 45 days before he filed his notice of appeal. Blake did not pay a docket fee within 30 days after the judgment, relying instead on the court's order allowing him to proceed in forma pauperis and ordering that all costs associated with the appeal be borne by the county.

[7-9] The Nebraska Constitution, in Neb. Const. art. V, § 2, limits appellate jurisdiction to "such appellate jurisdiction as may be provided by law." We have explained that the Nebraska Constitution allocates the regulation of appellate jurisdiction to the Legislature, not to this court.[9] The mode and manner of appeal is statutory, and a litigant who complies with the requirements of the applicable statute is entitled to a review of the case to the extent of the scope provided by law.[10] It is not the function of the courts to make statutory law, but instead to interpret such laws devised by the Legislature.[11] The appellate jurisdiction of a court is contingent upon timely compliance with constitutional or statutory methods of appeal.[12]

---

[8] *State v. Anderson*, 305 Neb. 978, 943 N.W.2d 690 (2020).

[9] *Heckman v. Marchio*, 296 Neb. 458, 894 N.W.2d 296 (2017).

[10] *From v. Sutton*, 156 Neb. 411, 56 N.W.2d 441 (1953).

[11] *Id.*

[12] *In re Interest of L.T.*, 295 Neb. 105, 886 N.W.2d 525 (2016).

Neb. Rev. Stat. § 25-1912(1) (Cum. Supp. 2020) sets forth the procedure for perfecting an appeal and focuses on the "filing"—within 30 days after the judgment, decree, or final order—of the notice of appeal and a docket fee (except as provided in the in forma pauperis statutes). Section 25-1912(1) provides:

> The proceedings to obtain a reversal, vacation, or modification of judgments and decrees rendered or final orders made by the district court, including judgments and sentences upon convictions for felonies and misdemeanors, shall be by filing in the office of the clerk of the district court in which such judgment, decree, or final order was rendered, within thirty days after the entry of such judgment, decree, or final order, a notice of intention to prosecute such appeal signed by the appellant or appellants or his, her, or their attorney of record and, except as otherwise provided in sections 25-2301 to 25-2310 and 29-2306 and subsection (4) of section 48-638, by depositing with the clerk of the district court the docket fee required by section 33-103.

Subsection (4) of § 25-1912 sets forth that the appeal shall be deemed "perfected" when such notice of appeal and docket fee (except as provided by the in forma pauperis statutes) have been filed and that "no step other than the filing of such notice of appeal and the depositing of such docket fee shall be deemed jurisdictional." In full, § 25-1912(4) states:

> Except as otherwise provided in subsection (3) of this section, sections 25-2301 to 25-2310 and 29-2306, and subsection (4) of section 48-638, an appeal shall be deemed perfected and the appellate court shall have jurisdiction of the cause when such notice of appeal has been filed and such docket fee deposited in the office of the clerk of the district court. After being perfected no appeal shall be dismissed without notice, and no step other than the filing of such notice of appeal and the depositing of such docket fee shall be deemed jurisdictional.

Section 29-2306 describes that the timing of the filing of the application to proceed in forma pauperis by a defendant in a criminal case must, like a docket fee, be within 30 days after the judgment, order, or sentence. Further, § 29-2306 states that "[i]f an application to proceed in forma pauperis is filed and granted, the Court of Appeals or Supreme Court shall acquire jurisdiction of the case when the notice of appeal is filed with the clerk of the district court." No payment will be required unless the court denies the application. Section 29-2306 provides in full:

> If a defendant in a criminal case files, within thirty days after the entry of the judgment, order, or sentence, an application to proceed in forma pauperis in accordance with sections 25-2301 to 25-2310 with the clerk of the district court, then no payment of the docket fee shall be required of him or her unless the defendant's application to proceed in forma pauperis is denied. The clerk of the district court shall forward a certified copy of such application, including the affidavit, to the Clerk of the Supreme Court. If an application to proceed in forma pauperis is filed and granted, the Court of Appeals or Supreme Court shall acquire jurisdiction of the case when the notice of appeal is filed with the clerk of the district court. In cases in which an application to proceed in forma pauperis is granted, the amount of the costs shall be endorsed on the mandate and shall be paid by the county in which the indictment was found.

Section 25-2301.01 sets forth that the application to proceed in forma pauperis shall include an affidavit stating that the affiant is unable to pay the fees and costs or give security required to proceed with the case; the nature of the action, defense, or appeal; and the affiant's belief that he or she is entitled to redress.

Under § 25-2301.02, the application to proceed in forma pauperis shall be granted unless there is an objection that the party filing the application has sufficient funds to pay costs,

fees, or security or is asserting legal positions which are frivolous or malicious. Further, § 25-2301.02(1) describes that any objection to the application, by the court or any interested person, shall be made within 30 days after the filing of the application or at any time if the ground for the objection is that the initial application was fraudulent. An evidentiary hearing on an objection shall be held unless it is by the court's own motion on the grounds that the applicant is asserting legal positions that are frivolous or malicious, but the court denying the application on its own motion shall provide a written statement of its reasons, findings, and conclusions for denial.[13] The applicant may appeal the denial of the application.[14]

Neb. Rev. Stat. § 25-2310 (Reissue 2016) provides that any applicant who fraudulently fails to disclose material assets or income for the purpose of invoking the privileges of §§ 25-2301 to 25-2310 is guilty of perjury.

No statute addresses the timing of the execution of the poverty affidavit that § 25-2301.01 says shall accompany the application to proceed in forma pauperis. The State relies on our appellate rule, § 2-101, for "Docketing the case."

Subsection (A) of § 2-101 concerns perfecting the appeal and focuses on the timely filing of the notice of appeal and docket fee or application to proceed in forma pauperis and the accompanying poverty affidavit. Subsection (A) of § 2-101, as in effect at the relevant time, stated in full:

> Perfecting the Appeal. Every appeal shall be deemed perfected when the notice of appeal as provided in § 2-101(B)(1)(a) and the docket fee required by Neb. Rev. Stat. § 33-103 or an application to proceed in forma pauperis and a poverty affidavit pursuant to Neb. Rev. Stat. § 29-2306 or Neb. Rev. Stat. § 25-2301 et seq. have been filed in the office of the clerk of the trial court and such application has been granted by that court.

---

[13] See § 25-2301.02(1).

[14] See *id.*

Subsection (B) of § 2-101 concerns the clerk of the district court's obligations to forward documents to the Clerk of the Supreme Court. Parts of § 2-101(B) overlap with the obligations set forth by §§ 25-1912 and 29-2306 for the clerk of the district court to forward to the Clerk of the Supreme Court the certified copy of the notice of appeal, the docket fee or application to proceed in forma pauperis and the accompanying affidavit, and the transcript. Other subsections, such as § 2-101(B)(4), do not overlap with any current statutory provision. According to § 2-101(B), as in effect at the relevant time:

> The clerk of the district court shall within 2 business days of receipt of a notice of appeal send the following items to the Clerk of the Supreme Court:
>
> . . . .
>
> (4) [A] copy of the application to proceed in forma pauperis and accompanying poverty affidavit which has been executed no more than 45 days prior to the filing of notice of appeal.

In *State v. Parmar*,[15] we explained that the statutes governing appellate jurisdiction address the timing of the "filing" of certain documents. When a poverty affidavit is substituted for the docket fee, it must be filed within the time and in the manner required for filing the docket fee.[16] We pointed out that the statutes governing appellate jurisdiction, however, do not set forth any mandate pertaining to the timing of the affidavit's *execution*, which simply refers to the signing and notarizing of the document. We therefore found no merit to the defendant's argument in *Parmar* that he had perfected his appeal by, in lieu of filing a separate application to proceed in forma pauperis, requesting within his notice of appeal that we recognize a poverty affidavit predating the trial court's order, but executed within 45 days of the notice of appeal in accordance with

---

[15] *State v. Parmar*, 255 Neb. 356, 586 N.W.2d 279 (1998).

[16] *Id.*

our appellate rules. We explained that, to perfect an appeal, the affidavit must have been *filed* within 30 days after the rendition of the judgment as required by statute, and our appellate rule concerning *execution* within 45 days "says nothing as to when the affidavit must be *filed*."[17]

Subsequently, in *State v. Dallmann*,[18] we addressed the newly adopted language of § 29-2306 that "[i]f an application to proceed in forma pauperis is filed and granted, the Court of Appeals or Supreme Court shall acquire jurisdiction of the case when the notice of appeal is filed with the clerk of the district court." We noted that this language was adopted at the same time § 25-2301.02 was created, which, as set forth above, describes the process of objecting to the application to proceed in forma pauperis and the district court's holding an evidentiary hearing on the objection before it determines whether to grant the application. We explained, "Section 25-2301.02 makes clear that challenges to the ability of a defendant to proceed in forma pauperis are to occur in the district court and that the district court is charged with the responsibility of granting or denying the motion to proceed in forma pauperis."[19]

We held that under the statutory scheme as amended, an objection that the affidavit failed, in accordance with § 25-2301.01, to state the nature of the action, defense, or appeal, and the belief that the affiant is entitled to redress, must be raised in the district court or else it is waived.[20] In *Dallmann*, we indicated that such details of the allegations in the affidavit, which are described in § 25-2301.01, are not jurisdictional, but are instead matters to be considered by the district court in determining, under § 25-2301.02, whether the party filing the application has sufficient funds to pay costs, fees, or

---

[17] See *id.* at 361, 586 N.W.2d at 283.

[18] *State v. Dallmann*, 260 Neb. 937, 621 N.W.2d 86 (2000).

[19] *Id.* at 947, 621 N.W.2d at 96.

[20] See *State v. Dallmann, supra* note 18.

security or is asserting legal positions which are frivolous or malicious.[21]

In *Dallmann*, we noted that even under the prior statutory scheme, we had held[22] that the lower court retains jurisdiction and has the duty to determine if the allegations of poverty are true and the appeal is taken in good faith. We concluded, "It is not a function of this court to determine whether an affidavit to proceed in forma pauperis contains specific language stating the nature of the case and that the affiant is entitled to redress,"[23] because, under § 29-2306, "'[i]f an application to proceed in forma pauperis is filed and granted, the Court of Appeals or Supreme Court shall acquire jurisdiction of the case when the notice of appeal is filed with the clerk of the district court.'"[24] We accordingly addressed in *Dallmann* the underlying merits of an appeal for which the district court had sustained the appellant's motion to proceed in forma pauperis, even though the appellant's poverty affidavit did not state the nature of the action or that the appellant believed he was entitled to redress.

Later, in *State v. Ruffin*,[25] we addressed that aspect of § 25-2301.01 referring to "the affiant" setting forth in the "affidavit" an inability to pay the fees and costs, which language was previously found in Neb. Rev. Stat. § 25-2301 (Reissue 1989). We reaffirmed our holding in *Dallmann* as it pertained to the failure to include statements in the poverty affidavit of the nature of the action, defense, or appeal, and the belief that the affiant is entitled to redress.[26] However, we found still applicable under the amended statutory scheme a long line of case law holding that, absent good cause evident

---

[21] See *id.*

[22] See *Flora v. Escudero*, 247 Neb. 260, 526 N.W.2d 643 (1995).

[23] *State v. Dallmann, supra* note 18, 260 Neb. at 948, 621 N.W.2d at 96.

[24] *Id.* at 945, 621 N.W.2d at 95, quoting § 29-2306 (emphasis omitted).

[25] *State v. Ruffin*, 280 Neb. 611, 789 N.W.2d 19 (2010).

[26] See *id.*

in the record, it is a jurisdictional defect for the impoverished appellant to fail to personally sign before a notary the affidavit that substitutes for the payment of fees and costs and the posting of security.[27]

In *Ruffin*, we explained that not only does the affidavit become hearsay when signed by the attorney, but it places that attorney in a position of a witness, thus compromising his role as an advocate. And it is obvious that it is the financial condition of the party as affiant and not the financial wherewithal of the attorney that is relevant.[28] We said that the Legislature's use of the word "affidavit" in § 25-2301.01 was deliberate and "continues to require the hallmarks of an affidavit such as the signature of the affiant and a certificate of an authorized officer."[29] We held in *Ruffin* that despite the district court's having granted the appellant's motion to proceed in forma pauperis, appellate jurisdiction did not vest because the poverty affidavit was signed by the appellant's attorney and there was no good cause shown in the record why the appellant could not sign the affidavit.

[10] We conclude in the present appeal that the timing of the appellant's *execution* of the poverty affidavit is not, like an "affiant" personally signing the "affidavit," fundamental to the concept of an "affidavit" set forth in § 25-2301.01, and we can find no other statutory provision or case law that makes the relative staleness of the *execution* of a poverty affidavit a jurisdictional matter. As we illustrated in *Parmar*, the statutes describing the mode and manner of obtaining appellate jurisdiction nowhere refer to the timing of execution; they only refer to the timing of "filing."[30]

[11] Again, the responsibility of granting or denying a motion to proceed in forma pauperis lies with the district

---

[27] See *id.*

[28] See *id.*

[29] *Id.* at 618, 789 N.W.2d at 25.

[30] See *State v. Parmar, supra* note 15.

court, and pursuant to § 25-2301.02, "An application to proceed in forma pauperis shall be granted unless there is an objection that the party filing the application (a) has sufficient funds to pay costs, fees, or security or (b) is asserting legal positions which are frivolous or malicious." The staleness of the execution of the poverty affidavit is a relevant consideration by the district court in determining whether the party filing the application has sufficient funds to pay costs, fees, or security. Thus, the relative staleness of the execution of poverty affidavit is a proper basis for an objection under § 25-2301.02, which shall be made within 30 days after the filing of the application or at any time if the ground for the objection is that the initial application was fraudulent. No such objection occurred in this matter.

Any issue pertaining to the staleness of the affidavit, like alleged inadequacies of the appellant's statements in the affidavit pertaining to the nature of the action and belief of entitlement to redress, is a matter to be evaluated by the district court in the course of determining whether to grant the defendant's application to proceed in forma pauperis. The relative staleness of the execution of a poverty affidavit does not change the mandate of § 29-2306 that "[i]f an application to proceed in forma pauperis is filed and granted, the Court of Appeals or Supreme Court shall acquire jurisdiction of the case when the notice of appeal is filed with the clerk of the district court" nor the mandate of § 25-1912(4) that "no step other than the filing of such notice of appeal and the depositing of such docket fee shall be deemed jurisdictional."

Once the lower court grants the application to proceed in forma pauperis, the county becomes responsible for the docket fee and other costs associated with the appeal. Lack of staleness of execution under a particular measure of days is not an essential prerequisite to appellate jurisdiction. Section 25-1912 must be read together with related statutes, including § 29-2306, and, under the current statutory scheme, the jurisdictional prerequisite of a filing fee is satisfied when the lower

court grants in forma pauperis status after considering a timely filed application and accompanying affidavit that, unless good cause is shown in the record why the appellant could not sign the affidavit, was executed personally by the impoverished appellant.

Of course, the grant of in forma pauperis status does not preclude requests that the clerk of the district court obtain and forward to the Clerk of the Supreme Court a more updated poverty affidavit, and it does not immunize the appellant from later being punished for perjury if the appellant attempted to deceive the court by providing information that, under a more current affidavit, would no longer be true.[31] But the appellant relies upon a district court's order granting in forma pauperis status when the appellant fails to timely file a docket fee. We cannot deem the staleness of the execution of a timely filed poverty affidavit "jurisdictional" and thereby circumvent the district court's statutorily conferred duty and discretion to determine, as a factual matter, whether the party filing the application "(a) has sufficient funds to pay costs, fees, or security or (b) is asserting legal positions which are frivolous or malicious."[32]

Indeed, the State misreads our appellate rule, § 2-101(B)(4), in arguing that the 45-day period for execution of a poverty affidavit is a bright-line jurisdictional rule. The 45-day period for execution described in § 2-101(B)(4) does not purport to have that effect. The 45-day requirement is not part of the rule's description of how to perfect an appeal.

The 45-day staleness reference falls instead under the heading, "Forwarding to Supreme Court," and is contained within a long list of items that the clerk of the district court shall send to the Clerk of the Supreme Court. An appeal is an important part of the legal process, especially when an appellant's liberty is at stake. Our appellate rules endeavor to prevent

---

[31] See § 25-2310.

[32] See § 25-2301.02.

misconceptions that could result in the loss of appeals, not to create them.

Section 2-101(A), describing the means to perfect an appeal, is clear. Thereunder, the appeal is perfected when the notice of appeal and the docket fee or an application to proceed in forma pauperis and a poverty affidavit have been filed in the office of the clerk of the trial court and such application has been granted by that court. Blake fulfilled these requirements. He timely filed his notice of appeal, he timely filed his application to proceed in forma pauperis, and he timely filed his poverty affidavit, all within 30 days after the final order as set forth by statute. Further, the affidavit was signed by Blake before a notary.

We disagree with the State's argument that we lack jurisdiction over this new direct appeal because Blake's poverty affidavit was signed and notarized more than 45 days before Blake timely filed his notice of appeal.

We turn to the assignments of error raised in Blake's new direct appeal. These consist of a challenge to the sentence as excessive and several claims of ineffective assistance of trial counsel.

## 2. Excessive Sentence

When sentences imposed within statutory limits are alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering well-established factors and any applicable legal principles.[33] A judicial abuse of discretion exists only when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.[34]

[12,13] When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background,

---

[33] *State v. Greer, supra* note 4.

[34] See *State v. Collins*, 292 Neb. 602, 873 N.W.2d 657 (2016).

(5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime.[35] The sentencing court is not limited to any mathematically applied set of factors, but the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.[36]

Blake asserts his sentence was excessive in light of the mitigating factors of his mental health diagnoses and history of being physically and sexually abused as a child. Appellate counsel describes that Blake grew up a "ticking sexual timebomb" and states that the State failed to create an ongoing treatment plan which could have prevented him from later "act[ing]-out" through sexual assault.[37]

There is no indication from the record that the trial court ignored Blake's mental health diagnoses and history of being physically and sexually abused or that it considered impermissible or unreasonable factors in fashioning Blake's sentence. Blake committed a violent crime against a younger child and the PSI report shows he did not cease preying on younger victims and committing assaults since the time when this crime was committed. Even in light of Blake's mental health struggles and unfortunate circumstances growing up, the district court's sentence of 9 to 14 years' imprisonment, to run consecutively with other sentences, was well within the sentencing range of 0 to 20 years' imprisonment[38] and was not clearly against justice or conscience, reason, and evidence. We find no merit to Blake's assignment that the district court imposed an excessive sentence.

---

[35] *State v. Greer, supra* note 4.

[36] *Id.*

[37] Brief for appellant at 9.

[38] See §§ 28-319 and 28-201(4)(b).

### 3. Determinations of Claims Beyond
### Final Order of New Direct Appeal

[14] Before turning to Blake's assignments of error in his new direct appeal alleging ineffective assistance of trial counsel, we address another procedural matter relating to the fact that the district court's postconviction order purported to dispose of those claims. We have explained that when a postconviction motion alleges a claim of ineffective assistance based on counsel's failure to file a direct appeal, which, alongside other claims of ineffective assistance of counsel, requests as relief a new direct appeal, the district court must first address the claim that counsel was ineffective for failing to file a direct appeal and enter a final order on that claim only.[39]

If it does not, we vacate that portion of the order that prematurely addresses the claims unrelated to the request for relief of a new direct appeal.[40] If the new direct appeal is granted by the district court, then the other postconviction claims might be raised and determined on direct appeal, thereby preventing needless determinations by the district court on the underlying postconviction motion.[41]

Because Blake is represented by a different attorney on direct appeal than at trial, he has raised the same claims of ineffective assistance of counsel that he raised in his postconviction motion granting this new direct appeal. He in fact must raise those claims in this direct appeal or be procedurally barred from asserting them in a postconviction motion.[42] We vacate the district court's order to the extent that it denied those claims without an evidentiary hearing, and we consider Blake's ineffective assistance claims anew in this direct appeal.

---

[39] See *State v. Dalton*, 307 Neb. 465, 949 N.W.2d 752 (2020).

[40] See, *id.*; *State v. Determan*, 292 Neb. 557, 873 N.W.2d 390 (2016).

[41] See *State v. Determan, supra* note 40.

[42] See *State v. Newman*, 300 Neb. 770, 916 N.W.2d 393 (2018).

### 4. Claims of Ineffective Assistance
### of Trial Counsel

Broadly, Blake asserts claims of ineffective assistance in relation to trial counsel's representation during sentencing and advice to him to plead no contest to the underlying charge.

### (a) Ineffective Assistance at Sentencing

[15] We find the record affirmatively rebuts Blake's contention that his sentence was the result of ineffective assistance of trial counsel. To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*,[43] the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.[44] The record is sufficient to resolve on direct appeal a claim of ineffective assistance of counsel if the record affirmatively proves or rebuts either deficiency or prejudice with respect to the defendant's claims.[45]

Blake argues counsel was ineffective during sentencing, first, by failing to present evidence of his "diminished mental capacity."[46] Second, Blake claims counsel was ineffective by failing to present evidence of Blake's childhood background as a victim of physical and sexual abuse. We address each in turn.

### (i) Diminished Mental Capacity

Blake claims he disclosed to his trial counsel his diminished mental capacity during her representation in case No. CR 18-846, which disclosure led to Blake's competency evaluation in that case. Although he was ultimately found to be competent, "none of that information was brought forward to the district court prior to sentencing in this matter."[47] Without

---

[43] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[44] *State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014).

[45] *State v. Wood, supra* note 6.

[46] Brief for appellant at 9.

[47] *Id.*

elaboration, Blake asserts that trial counsel was ineffective in failing to bring to the attention of the district court the "contents of his evaluation and diminished mental capacity" in case No. CR 18-826 and that his sentence would have been different had the "issue been brought to light at his sentencing hearing or before, and included in his presentence investigation report."[48]

We note at the outset that Blake's argument is somewhat confusing and underdeveloped. As Blake concedes, the discussion during the competency hearing in case No. CR 18-846 reflects that the court found Blake to be competent after reviewing an evaluation finding him to be competent and hearing Blake's and his defense counsel's assurances that Blake was competent to enter his plea. The "contents of his evaluation" thus appear to be that he was competent.[49] The PSI report reviewed by the district court before sentencing Blake in this case shows Blake's intelligence quotient to be within the normal range. Both Blake and his counsel assured the court there was nothing in the PSI report that needed to be added, corrected, or taken out.

Blake does not suggest that we cannot determine this ineffective assistance of counsel claim on direct appeal, and we can see no reason why Blake cannot better articulate what, exactly, he believes trial counsel should have presented at the sentencing hearing. We surmise from his arguments that the only information he believes the sentencing court in case No. CR 19-527 lacked was that another court had recently conducted a competency hearing. We cannot find that counsel was ineffective in failing to add this information to the PSI report when it is undisputed that Blake was found to be competent.

[16] Otherwise, Blake's argument appears to be that trial counsel was ineffective by failing to bring to the attention of the district court what he refers to as his "diminished

---

[48] *Id.* at 10.

[49] *Id.*

mental capacity," which we surmise refers to Blake's mental health diagnoses and hospitalizations, which were reflected in the PSI report. Under Neb. Rev. Stat. § 29-2261 (Cum. Supp. 2020), the court "shall not impose sentence without first ordering a [PSI] of the offender and according due consideration to a written report of such investigation." Absent affirmative evidence to the contrary, we will presume that the sentencing court fulfilled its statutory obligation to give a PSI report due consideration, whether or not any particular aspect of the report was highlighted by defense counsel. Here, the court indicated at the sentencing hearing it had considered the PSI report, and Blake does not suggest that there is any affirmative evidence to be found outside the record demonstrating differently. The trial record refutes that Blake was prejudiced by trial counsel's failure to specifically bring to the court's attention matters contained in the PSI report, which the court gave due consideration.

### (ii) Childhood Background

We similarly find the record affirmatively rebuts Blake's claim that trial counsel was ineffective by failing to present evidence of his childhood background as a victim of physical and sexual abuse. Blake describes that the PSI report contains "over 75 pages of information regarding his background, including physical and sexual abuse that occurred during his childhood."[50] Blake does not suggest there was significant information missing from the PSI report that should have been brought to light. Rather, Blake's argument is that trial counsel failed to highlight or discuss the information found in the PSI report concerning Blake's history as a victim of physical and sexual abuse, which "could have swayed the district court in its sentence."[51]

We reiterate that we will presume the sentencing court fulfilled its statutory obligation to review the PSI report and

---

[50] *Id.* at 13.

[51] *Id.*

give it due consideration. Moreover, the record here reflects that trial counsel did in fact highlight for the court at the sentencing hearing that Blake suffered from a number of mental health issues and had a history with the Department of Health and Human Services. Trial counsel was not deficient nor was Blake prejudiced with respect to the alleged failure to highlight for the court at sentencing Blake's childhood background as a victim of physical and sexual abuse.

### (b) Ineffective Assistance in Relation to Plea

Blake assigns two errors alleging ineffective assistance of trial counsel in relation to his plea. First, he asserts trial counsel was ineffective by not properly investigating Blake's claimed innocence by interviewing certain named witnesses and getting statements from them. Second, he asserts trial counsel was ineffective by not pursuing a motion to quash the information or a motion to suppress statements and evidence taken from Blake during the course of the investigation. We find the first claim sufficiently raised but not determinable on direct appeal, and we find the second claim is not sufficiently raised.

[17] When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record.[52] Otherwise, the ineffective assistance of trial counsel issue will be procedurally barred.[53] Once raised, the appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims; an ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing.[54] This procedure promotes judicial economy by allowing the appellate court that is already examining the trial record to address the merits of the ineffective assistance claim at the first

---

[52] *State v. Abdullah*, 289 Neb. 123, 853 N.W.2d 858 (2014).

[53] *Id.*

[54] *Id.*

opportunity and to prevent postconviction courts from having to "'search for needles in haystacks'" to determine if a viable ineffective assistance claim could have been made on direct appeal.[55]

[18,19] The necessary specificity of allegations of ineffective assistance of trial counsel on direct appeal for purposes of avoiding waiver requires, at a minimum, allegations of deficient performance described with enough particularity for an appellate court to make a determination of whether the claim can be decided upon the trial record and also for a district court later reviewing a potential petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court.[56] Assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity.[57]

### (i) Failing to Interview Potential Witnesses

The State submits Blake's claim pertaining to the failure to interview witnesses was sufficiently raised but that the record is insufficient to review it. We agree.

[20] When the claim of ineffective assistance on direct appeal involves uncalled witnesses, vague assertions that counsel was deficient for failing to call "witnesses" are little more than placeholders and do not sufficiently preserve the claim.[58] However, the appellate court does not need specific factual allegations as to what the person or persons would have said, which will not be found in the appellate record.[59] It is sufficient that appellate counsel give on direct appeal the names or descriptions of any uncalled witnesses forming the basis

---

[55] See *id.* at 130, 853 N.W.2d at 865.

[56] See *State v. Lee*, 304 Neb. 252, 934 N.W.2d 145 (2019).

[57] *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019).

[58] See *State v. Abdullah, supra* note 52.

[59] See *id.*

of a claim of ineffective assistance of trial counsel.[60] Such specificity is necessary so that the postconviction court may later identify whether a particular claim of failing to investigate a witness is the same one that was raised on direct appeal.[61]

Blake's assignment of error and supporting argument specified the names of the witnesses he claims that, if investigated, would have supported his innocence. Blake sufficiently raised his claim of ineffective assistance in relation to the uncalled witnesses in order to preserve it, but it is apparent that we cannot determine on direct appeal the nature of those witnesses' accounts and whether they would have actually supported Blake's innocence. Therefore, we cannot resolve this allegation of ineffective assistance on direct appeal, but this claim is preserved for purposes of postconviction.

### (ii) Failing to Pursue Motions to Quash Information or Suppress Statements and Evidence

In contrast, we find that Blake has failed to raise with sufficient particularity the nature of his claims that trial counsel was ineffective by not moving to quash the information or suppress statements and evidence. Blake assigns that trial counsel was ineffective in failing to pursue a motion to quash the information or a motion to suppress statements and evidence taken from Blake during the course of investigation. In his arguments under the heading for this assignment of error, Blake merely sets forth standard propositions of law from *Strickland*[62] and *U.S. v. Cronic*[63] and summarizes: "Basically, trial counsel did nothing in [Blake's] matter to subject the case to any adversarial processes."[64]

---

[60] See *id.*

[61] See *id.*

[62] *Strickland v. Washington, supra* note 43.

[63] *United States v. Cronic*, 466 U.S. 648, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984).

[64] Brief for appellant at 12.

[21-23] Blake's argument is conclusory in nature. Where an appellant's brief contains conclusory assertions unsupported by a coherent analytical argument, the appellant fails to satisfy the requirement that the party asserting the alleged error must both specifically assign and specifically argue it in the party's initial brief.[65] A claim insufficiently stated is no different than a claim not stated at all.[66] When a party fails to follow the rules of the Nebraska Supreme Court, an appellate court may proceed as though the party had failed to file a brief or, alternatively, may examine the proceedings for plain error.[67] Blake's conclusory argument does not allow us to determine whether the claim can be decided upon the trial record, nor does it allow a district court in a potential postconviction action to recognize if the claim was brought before the appellate court.

[24] Blake's argument remains insufficiently specific even if we read it together with its heading repeating the assignment of error. An argument that does little more than restate an assignment of error does not support the assignment, and an appellate court will not address it.[68]

[25,26] Absent from both the assignment of error and the argument is on what grounds Blake believes the information would have been quashed. Also absent is what statements and evidence would have been suppressed had a motion been made, and on what grounds. Counsel is not deficient for failing to file a meritless motion,[69] and we will not search the record to determine the possible grounds for pretrial motions a defendant on direct appeal asserts trial counsel was deficient in failing to make. Furthermore, without specifying which statements and evidence appellate counsel believes trial counsel

---

[65] *State v. Chase, ante* p. 160, 964 N.W.2d 254 (2021).

[66] *State v. Abdullah, supra* note 52.

[67] *Steffy v. Steffy*, 287 Neb. 529, 843 N.W.2d 655 (2014).

[68] *State v. Smith*, 292 Neb. 434, 873 N.W.2d 169 (2016).

[69] See *State v. Anderson, supra* note 8. See, also, e.g., *U.S. v. Islam*, 932 F.3d 957 (D.C. Cir. 2019); *Denson v. U.S.*, 804 F.3d 1339 (11th Cir. 2015).

should have sought to suppress, a postconviction court will be unable to identify whether the same claim was brought before the appellate court. Allegations on direct appeal of ineffective assistance of trial counsel for failing to make a motion under some broad category, such as a motion to suppress or a motion to quash, without more detail as to the subject of and grounds for the motion, are, like claims for failing to investigate or call "witnesses," mere placeholders.

Blake fails to explain with sufficient particularity the subject of the motions he asserts trial counsel ought to have made or why there would have been grounds for filing the motions. Blake has thus failed to sufficiently allege deficient performance.[70] This claim of ineffective assistance of trial counsel is not properly raised in this appeal.

## VI. CONCLUSION

In the new direct appeal, we affirm Blake's conviction and sentence. We vacate that part of the court's postconviction order prematurely addressing the claims of ineffective assistance unrelated to the request for relief of a new direct appeal. With the exception of Blake's claim that counsel was ineffective by failing to interview the named witnesses, we find in the new direct appeal that Blake's claims of ineffective assistance of trial counsel are either insufficiently raised or affirmatively refuted by the record.

Affirmed in part, and in part vacated.

---

[70] See *State v. Ash*, 293 Neb. 583, 878 N.W.2d 569 (2016).

Cassel, J., dissenting.

Because the controlling statutes, conjunctively and strictly construed, required that Blake's affidavit of poverty be made within 30 days after the order, I would hold that this court lacks jurisdiction and that the appeal should be dismissed.

I have no particular quarrel with the majority's factual recitation. As the majority states, Blake pled no contest to a

reduced charge of first degree sexual assault. In December 2019, the district court sentenced him to 9 to 14 years' imprisonment. Blake did not file a direct appeal.

In February 2020, Blake filed a motion for postconviction relief, alleging, in part, that he received ineffective assistance of counsel because he was "denied [his] request for a direct appeal." After soliciting and receiving the State's position, the district court granted an evidentiary hearing on this aspect of Blake's motion and appointed new counsel. The hearing took place on August 19. On October 2, the court granted postconviction relief "in the form of reinstating [Blake's] right to file a direct appeal."

On October 27, 2020, Blake filed a notice of appeal and a motion to proceed in forma pauperis with the clerk of the district court. However, his motion was not accompanied by an affidavit. Three days later, on October 30, he submitted a poverty affidavit which was filed by the district court clerk. However, the jurat completed by the notary public on Blake's affidavit attested that Blake signed it and swore to its contents on July 2, which was 3 full months *before* the court granted his new direct appeal.

The Nebraska Court of Appeals dismissed Blake's appeal, citing Neb. Ct. R. App. P. §§ 2-101(B)(4) (rev. 2015) and 2-107(A)(2) (rev. 2012). Blake sought rehearing. The Court of Appeals sustained Blake's motion for rehearing, reinstated his appeal, and ordered the parties to brief the "issue of jurisdiction specifically related to . . . § 2-101(B)(4) which requires a poverty affidavit in lieu of a docket fee to be executed no more than 45 days prior to the notice of filing of the appeal." Before disposition of the appeal, it was moved to this court's docket.[1]

I agree with the basic standards of review recited by the majority. A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter

---

[1] Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2020).

of law.[2] Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the determination made by the court below.[3]

The State argues that because Blake's affidavit of poverty was made 3 months before the relief of a new direct appeal was granted, we lack jurisdiction. Blake disagrees.

The parties' briefing, probably responding to the Court of Appeals' direction, primarily addressed the effect of our appellate rule, § 2-101(B)(4). But I focus solely on the statutory requirements.

I begin by reciting three fundamental principles of appellate jurisdiction. Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.[4] Except in those cases wherein original jurisdiction is specially conferred by Neb. Const. art. V, § 2, this court exercises appellate jurisdiction, and such appellate jurisdiction can be conferred only in the manner provided by statute.[5] Most important to my analysis is the principle that jurisdictional statutes must be strictly construed.[6]

For civil cases since 1941[7] and criminal cases since 1961,[8] the statutory process of perfecting appellate jurisdiction has

---

[2] *State v. Greer*, 309 Neb. 667, 962 N.W.2d 217 (2021).

[3] *State v. Riessland, ante* p. 262, 965 N.W.2d 13 (2021).

[4] *State v. Harris*, 307 Neb. 237, 948 N.W.2d 736 (2020).

[5] *Nebraska Dept. of Health & Human Servs. v. Struss*, 261 Neb. 435, 623 N.W.2d 308 (2001).

[6] See, *Thomas v. Peterson*, 307 Neb. 89, 948 N.W.2d 698 (2020); *Lombardo v. Sedlacek*, 299 Neb. 400, 908 N.W.2d 630 (2018); *State v. Parmar*, 255 Neb. 356, 586 N.W.2d 279 (1998). See, also, *Barney v. Platte Valley Public Power and Irrigation District*, 144 Neb. 230, 13 N.W.2d 120 (1944).

[7] See 1941 Neb. Laws, ch. 32, § 1, p. 141.

[8] See 1961 Neb. Laws, ch. 135, § 1, p. 388.

imposed upon an appellant two basic tasks. An appellate court
has no power to exercise appellate jurisdiction in proceedings
to review the judgment of the district court unless the appel-
lant shall have filed a notice of appeal and deposited a docket
fee in the office of the clerk of the district court within the
time fixed and as provided in Neb. Rev. Stat. § 25-1912 (Cum.
Supp. 2020).[9]

This court has repeatedly stated that the legislative history
of § 25-1912 shows "the [Nebraska] Legislature intended that
the filing of the notice of appeal and the depositing of the
docket fee in the office of the clerk of the district court are
*both* mandatory and jurisdictional."[10] This court has also rec-
ognized that "'no step other than the filing of such notice of
appeal and the depositing of such docket fee shall be deemed
jurisdictional.'"[11]

Where, as here, a district court grants postconviction relief
in the form of a new direct appeal, the time for perfecting the
appeal begins with the entry of the order granting that relief.[12]
That order was entered on October 2, 2020. There is no dis-
pute that the notice of appeal was timely filed. Although no
docket fee was deposited within the 30-day period that began
on October 2, a statutory alternative exists where an appellant
claims that he or she is unable to pay the fee.

In lieu of depositing the required docket fee, Neb. Rev.
Stat. § 29-2306 (Reissue 2016) allows a criminal defendant
to request to proceed in forma pauperis on appeal.[13] When a

---

[9] See *State v. Parmar, supra* note 6.

[10] See, *id.* at 360, 586 N.W.2d at 282 (internal quoatation marks omitted);
*American Legion Post No. 90 v. Nebraska Liquor Control Commission*,
199 Neb. 429, 259 N.W.2d 36 (1977); *Barney v. Platte Valley Public
Power and Irrigation District, supra* note 6.

[11] *Barney v. Platte Valley Public Power and Irrigation District, supra* note 6,
144 Neb. at 233, 13 N.W.2d at 122.

[12] See *State v. McCracken*, 260 Neb. 234, 615 N.W.2d 902 (2000), *abrogated
on other grounds, State v. Thomas*, 262 Neb. 985, 637 N.W.2d 632 (2002).

[13] *State v. Melton*, 308 Neb. 159, 953 N.W.2d 246 (2021).

party seeks to appeal in forma pauperis, a poverty affidavit serves as a substitute for the docket fee otherwise required upon appeal.[14] Section 29-2306 requires that an application to proceed in forma pauperis be "in accordance with sections 25-2301 to 25-2310." Thus, the question becomes, what does this collection of related statutes require?

Components of a series or collection of statutes pertaining to a certain subject matter are in pari materia and should be conjunctively considered and construed to determine the intent of the Legislature, so that different provisions are consistent, harmonious, and sensible.[15] But here, because jurisdictional statutes must be strictly construed,[16] this court must consider and construe the controlling statutes both conjunctively and strictly.

I now recite the specific content of these statutes, emphasizing their most pertinent parts.

First, § 25-1912 states, in relevant part, as follows:

(1) The proceedings to obtain a reversal, vacation, or modification of judgments and decrees rendered or final orders made by the district court, including judgments and sentences upon convictions for felonies and misdemeanors, shall be *by filing in the office of the clerk of the district court* in which such judgment, decree, or final order was rendered, *within thirty days after the entry of such judgment*, decree, or final order, *a notice of intention to prosecute such appeal . . .* and, *except as otherwise provided in sections 25-2301 to 25-2310 and 29-2306 . . . , by depositing with the clerk of the district court the docket fee* required by section 33-103.

(2) A notice of appeal or docket fee filed or deposited after the announcement of a decision or final order but

---

[14] *Id.*

[15] *In re William R. Zutavern Revocable Trust*, 309 Neb. 542, 961 N.W.2d 807 (2021).

[16] See, *Thomas v. Peterson, supra* note 6; *Lombardo v. Sedlacek, supra* note 6; *State v. Parmar, supra* note 6.

before the entry of the judgment, decree, or final order shall be treated as filed or deposited after the entry of the judgment, decree, or final order and on the date of entry.

. . . .

(4) *Except as otherwise provided in . . . sections 25-2301 to 25-2310 and 29-2306*, . . . an appeal shall be deemed perfected and the appellate court shall have jurisdiction of the cause when such notice of appeal has been filed and such docket fee deposited in the office of the clerk of the district court. After being perfected no appeal shall be dismissed without notice, and *no step other than the filing of such notice of appeal and the depositing of such docket fee shall be deemed jurisdictional.*

(Emphasis supplied.)

Section 29-2306 provides:

If a defendant in a criminal case files, *within thirty days after the entry* of the judgment, order, or sentence, *an application* to proceed in forma pauperis *in accordance with sections 25-2301 to 25-2310* with the clerk of the district court, then *no payment of the docket fee shall be required* of him or her *unless the defendant's application to proceed in forma pauperis is denied.* The clerk of the district court shall forward a certified copy of such application, including the affidavit, to the Clerk of the Supreme Court. *If an application to proceed in forma pauperis is filed and granted, the Court of Appeals or Supreme Court shall acquire jurisdiction of the case when the notice of appeal is filed with the clerk of the district court.* In cases in which an application to proceed in forma pauperis is granted, the amount of the costs shall be endorsed on the mandate and shall be paid by the county in which the indictment was found.

(Emphasis supplied.)

Finally, Neb. Rev. Stat. § 25-2301.01 (Reissue 2016) states, "Any county or state court . . . may authorize the . . . appeal . . . of a . . . criminal case in forma pauperis. An application

to proceed in forma pauperis *shall include an affidavit stating that the affiant is unable to pay the fees and costs . . . .*" (Emphasis supplied.)

From the first of these statutes, several important principles emerge. First, § 25-1912(1) requires the filing of the notice of appeal and the deposit of the docket fee *after* the entry of the sentencing judgment.[17] Second, § 25-1912(2) treats a docket fee paid *before* entry of judgment but *after* announcement of the decision as having been deposited after the entry of judgment and on the date thereof. In other words, if a judgment has been announced but not entered, a docket fee deposited after the announcement would not be void as premature.[18] Here, the record makes no suggestion that the decision was announced prior to October 2, 2020. Thus, a docket fee paid before that date would have been premature and ineffective.[19] Finally, under § 25-1912(4), filing of the notice of appeal and deposit of the docket fee need not be simultaneous, so long as both actions occur within 30 days after the entry of judgment.[20]

More pertinent here, § 25-1912(1) and (4) provide exceptions regarding the docket fee requirement "as otherwise provided in sections 25-2301 to 25-2310 and 29-2306." With this understanding of the fundamental jurisdictional requirement of a timely deposit of a docket fee within 30 days *after* the entry of judgment, I turn to the effect of the provisions "otherwise provided." As I have already noted, the net effect of these provisions is that in an in forma pauperis appeal, a poverty

---

[17] See, *State v. Hartzell*, 304 Neb. 82, 933 N.W.2d 441 (2019); *State v. Lotter*, 301 Neb. 125, 917 N.W.2d 850 (2018); *In re Guardianship & Conservatorship of Woltemath*, 268 Neb. 33, 680 N.W.2d 142 (2004); *Haber v. V & R Joint Venture*, 263 Neb. 529, 641 N.W.2d 31 (2002); *State v. Hess*, 261 Neb. 368, 622 N.W.2d 891 (2001).

[18] See, *State v. Hartzell, supra* note 17; *In re Guardianship & Conservatorship of Woltemath, supra* note 17.

[19] See *In re Guardianship & Conservatorship of Woltemath, supra* note 17.

[20] See, also, *State v. Parmar, supra* note 6.

affidavit serves as a substitute for the docket fee that is otherwise required upon appeal.[21]

In order to understand the current versions of these provisions, I rely upon the Court of Appeals' recitation of significant statutory changes made in 1999.[22] Prior to amendments to § 29-2306 in 1999, it provided that "[i]f a defendant in a criminal case files . . . an affidavit with the clerk of the district court that he or she is unable by reason of poverty to pay the costs, then no payment of the docket fee shall be required of him or her."[23] That pre-1999 version of § 29-2306 further provided that "[i]f such affidavit is filed, the Court of Appeals or Supreme Court shall acquire jurisdiction of the case when the notice of appeal is filed with the clerk of the district court."[24] In 1999, however, the Legislature enacted amendments to the statutes governing the filing of in forma pauperis proceedings.[25]

> Specifically, the Legislature amended § 29-2306 (Cum. Supp. 2000) to provide that a defendant in a criminal case *must* file "an application to proceed in forma pauperis *in accordance with sections 25-2301 to 25-2310*" to be free of the requirement of filing a docket fee to vest the appellate court with jurisdiction.[26]

That same year, the Legislature created § 25-2301.01, which required that the application "shall include an affidavit stating that the affiant is unable to pay the fees and costs . . . ."[27] Section 25-2301.01 falls within the range of statutes specified

---

[21] See *State v. Melton, supra* note 13.

[22] See *State v. Grant*, 9 Neb. App. 919, 623 N.W.2d 337 (2001).

[23] See § 29-2306 (Reissue 1995).

[24] See *id.*

[25] See *State v. Grant, supra* note 22. See, also, 1999 Neb. Laws, L.B. 43, § 17, and 1999 Neb. Laws, L.B. 689, § 13.

[26] *State v. Grant, supra* note 22, 9 Neb. App. at 923, 623 N.W.2d at 341 (emphasis supplied).

[27] See *id*. See, also, 1999 Neb. Laws, L.B. 689, § 3.

in § 29-2306: "sections 25-2301 to 25-2310." Since 1999, both §§ 29-2306 and 25-2301.01 have remained unchanged.

Just as a docket fee is jurisdictional,[28] a poverty affidavit, which replaces a docket fee in an in forma pauperis appeal, is mandatory and jurisdictional.

In *State v. Parmar*,[29] this court distinguished the filing of a poverty affidavit from its execution. But that decision pre-dated the 1999 legislation amending § 29-2306 and enacting § 25-2301.01.

Two of this court's decisions have come after the 1999 legislation, but neither addresses the timing required for making an affidavit to be filed with an application to proceed in forma pauperis under §§ 25-1912, 29-2306, and 25-2301.01. In *State v. Dallmann*,[30] this court held that failure to include in the poverty affidavit statements of the nature of the action, defense, or appeal, and the belief that the affiant is entitled to redress, was not a jurisdictional defect in those cases in which in forma pauperis status was granted by the trial court without objection. In *State v. Ruffin*,[31] this court upheld a dismissal by the Court of Appeals where the poverty affidavit was signed by the defendant's attorney and not by the defendant. Neither decision speaks to the timing required for making a poverty affidavit.

Blake contends that our current statutory provisions do not prohibit reliance upon an affidavit made before entry of a sentencing judgment but not filed until after entry. But I contend that this interpretation is not consistent with a strict construction of §§ 25-1912, 29-2306, and 25-2301.01.

As I have already highlighted, the key language of these sections must be read together. Section 25-1912 emphasizes that one of the two jurisdictional requirements to perfect an

---

[28] See *State v. Greer, supra* note 2.

[29] *State v. Parmar, supra* note 6.

[30] *State v. Dallmann*, 260 Neb. 937, 621 N.W.2d 86 (2000).

[31] *State v. Ruffin*, 280 Neb. 611, 789 N.W.2d 19 (2010).

appeal is the deposit of a docket fee *after* the entry of the judgment or final order (or at least after the announcement of the decision, where there is a delay between announcement of the decision and entry of the judgment or final order). Section 29-2306, in turn, requires that an application to proceed in forma pauperis in a criminal appeal must be filed within 30 days *after* the entry of the judgment, order, or sentence, and must be "in accordance with [§ 25-2301.01]." Finally, § 25-2301.01 requires the application to proceed in forma pauperis to "include an affidavit stating that the affiant is unable to pay the fees and costs."

Blake's interpretation misconstrues the nature of an affidavit. The purpose of the affidavit required to be filed with an application to proceed in forma pauperis under § 25-2301.01 is to establish that at the time of making the application, the affiant is unable to pay the fees and costs of the proceeding. Averments in an affidavit must be true when the affidavit is made or they will never be true.[32] In considering whether an individual is entitled to in forma pauperis status, a court examines a current snapshot of that individual's financial position.[33] It is the affiant's financial condition at the time of the application to proceed in forma pauperis that is of importance.[34] It is possible that if a poverty affidavit is executed at a time different than when it is filed, a different snapshot of an individual's financial condition would emerge.[35]

Blake's interpretation would permit an affidavit that was true when made but false when filed to serve as the basis for waiving costs and fees. If the statutes, read together, do not include a requirement that the affidavit be made during the 30-day period after entry of the order (or at least after announcement of a decision), they impose no limit whatsoever

---

[32] 2A C.J.S. *Affidavits* § 41 (2013).

[33] See *Sabino v. Ozuna*, 303 Neb. 318, 928 N.W.2d 778 (2019).

[34] See *State v. Jensen*, 299 Neb. 791, 910 N.W.2d 155 (2018).

[35] See *Sabino v. Ozuna, supra* note 33.

on when the affidavit must be made. I contend that by enacting § 25-2301.01 and imposing a 30-day window in § 29-2306, the Legislature imposed a sensible limit.

Strictly and conjunctively construed, §§ 29-2306 and 25-2301.01 require that the affidavit to be included in an application to proceed in forma pauperis must be made within 30 days after the entry of the judgment, order, or sentence. Because the affidavit was made long before the required time, it was premature and void.

Blake failed to execute his poverty affidavit within 30 days after the court granted his new direct appeal, which, I contend, is a jurisdictional requirement. Therefore, this court lacks jurisdiction for the instant appeal and should dismiss it. Because the majority holds otherwise, I respectfully dissent.

FUNKE, J., joins in this dissent.