IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


STATE V. POPE


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

TEMARCO S. POPE, JR., APPELLANT.


Filed November 8, 2022.    No. A-21-984.


Appeal from the District Court for Lancaster County: RYAN S. POST, Judge. Affirmed.

Jonathan M. Braaten, of Anderson, Creager & Wittstruck, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.


PIRTLE, Chief Judge, and ARTERBURN and WELCH, Judges.

WELCH, Judge.

## INTRODUCTION

Temarco S. Pope, Jr. appeals his convictions of possession of a firearm by a prohibited person, subsequent offense, and possession of marijuana, more than one pound. He contends that (1) the district court erred in overruling his motions to suppress and motion to quash, and in sustaining the State's motion in limine; (2) the evidence was insufficient to support his conviction of possession of a firearm by a prohibited person, subsequent offense; (3) the sentences imposed were excessive; and (4) trial counsel "was ineffective in the general trial strategy." Brief for appellant at 7. For the reasons set forth herein, we affirm.

## STATEMENT OF FACTS

### FACTS LEADING TO ARREST

On June 5, 2020, Lincoln police officer John Hudec was traveling on I-80 when he observed a vehicle with out-of-state plates with the driver's side tires driving on the yellow

- 1 -

shoulder line. Officer Hudec's radar clocked the vehicle going 74 m.p.h. in a 65-m.p.h. zone. Hudec also observed that the vehicle was following too closely and failed to signal a lane change. The events of the traffic stop were captured on Officer Hudec's cruiser camera and were received into evidence at trial.

As Officer Hudec approached the vehicle, which he learned was a rental vehicle by running the vehicle's license plate, he contacted the driver of the vehicle and the front passenger who was identified as Pope. The driver provided Officer Hudec with his identification but did not have registration or rental paperwork for the vehicle. Officer Hudec requested that the driver accompany him to his cruiser while he issued him a warning. Officer Hudec completed a data check on the driver which indicated that the driver had a substantial criminal history including involvement with narcotics.

Officer Hudec observed that the driver appeared nervous during their interactions despite that he was only issuing him a warning. The driver indicated that they had been coming back from Colorado from visiting the driver's sister. During this time, Officer Hudec stated he observed that the artery in the driver's neck was pulsating and the driver was unable to provide any paperwork or information as to who had rented the vehicle that he was driving.

In order to obtain more information on the rental vehicle, Officer Hudec exited his cruiser to obtain the VIN number from the vehicle. During this time, he asked Pope about the nature of the trip which Pope was unable to answer immediately. After thinking about the answer for a moment, Pope stated that he and the driver were returning to Des Moines, Iowa, from protests in "Hampton." Officer Hudec was familiar with Hampton, Nebraska, but was not aware of a Hampton, Colorado. When asked, Pope was unable to identify in what state "Hampton" was located.

Officer Hudec returned to the cruiser and informed the driver that he was free to go but then asked if the driver would be willing to answer more questions. The driver agreed. Officer Hudec asked if there was contraband in the vehicle in which the driver responded that there was not. Officer Hudec then received consent from the driver to search the vehicle. While their vehicle was searched, Pope and the driver were placed in the backseat of the cruiser for the safety of the individuals and the officers. During the search of the vehicle, Officer Hudec and another officer who had been called to assist, located a 9-millimeter pistol including a magazine and six rounds of ammunition under the floormat of the front passenger seat. Officers also located a bag in the rear cargo area that contained approximately 1.9 pounds of marijuana in dispensary containers, several receipts, and a cell phone. The receipts showed purchases from various marijuana dispensaries in Colorado made the previous day. There was also a receipt dated 2 days prior from a gas station in Des Moines, Iowa.

During the search of the rental vehicle, the cruiser camera was still recording and captured a conversation between the driver and Pope wherein Pope stated "I can't take that pipe, bro" referring to the pistol. The driver asked Pope why he did not hide it, and Pope responded, "Bitch, I put it under the floorboard under the rug." During the conversation, Pope also asked whether the officers "know that's weed" as the officers were searching the cargo area of the vehicle. The two began discussing what they had told Officer Hudec about their trip and Pope reiterated that he "can't take the pipe" and the driver responded, "I got you."

Following the search of the vehicle, Officer Hudec read both the driver and Pope their *Miranda* rights, which they waived. Officer Hudec asked the two how much marijuana was in the car and neither party responded. Officer Hudec exited the cruiser again, and the parties again began conversing while the cruiser camera was recording. They discussed that they believed the amount of marijuana in the rental car was under 2 pounds. When Officer Hudec returned and asked who the gun belonged to, the driver stated, "it's mine." Officer Hudec asked whether Pope's DNA would be found on the pistol, and Pope said no but declined to take a DNA test. Officer Hudec again left the cruiser and the camera captured Pope apologizing to the driver stating, "it's my fault" since he had asked the driver to come with him. As a result of these events, Pope was charged with possession of a firearm by a prohibited person, and possession of marijuana, more than one pound. The State later amended the possession of a firearm charge to allege that it was a second or subsequent offense.

PRETRIAL MOTIONS

Prior to trial, Pope filed several pretrial motions including three motions to suppress and a motion to quash. The first motion to suppress sought "to suppress all evidence seized from [Pope], including, but not limited to, any visual and auditory observations made by the officers of the Lancaster County Sheriff's Office for the reason that the officers lacked probable cause to stop [Pope]." The second motion to suppress sought to suppress "any and all pre-trial admissions or statements made by [Pope] to any law enforcement personnel, for the reasons that such statements were not made and rights were not waived knowingly, intelligently, and voluntarily . . . and were obtained in violations of [Pope's] rights." The third motion to suppress sought to suppress

> any and all items of evidence seized from [Pope], . . . his motor vehicle or any other place in which he had an expectation of privacy for any one or more of the following reasons:
>
> 1. Said items of evidence were taken from [Pope] or [an] area in which he had an expectation of privacy without any valid or legal consent to seize the same. Any alleged consent was tainted by the unlawful arrest of [Pope].
>
> 2. There existed no reasonable suspicion or probable cause for the search or seizure of any of . . . said evidence.
>
> 3. Said search for and seizure of said items of evidence violated [Pope's federal and state constitutional rights] and . . . relevant provisions of the Nebraska Revised Statutes.
>
> 4. The search and seizure was not incident to a lawful arrest, nor is it allowed pursuant to any other recognized exception to the warrant requirement.
>
> 5. Said search and seizure was not conducted pursuant to a lawfully issued warrant from any court or magistrate.

Each of these motions to suppress were denied by the district court.

Pope also filed a motion to quash the State's amended information because "there is a defect apparent upon the face of the record, to wit: Count I in the Amended Information setting forth a penalty if a IB felony classification as applied to [Pope] in this matter is in violation of Neb. Const. art. I, [§] 15 . . . that requires all penalties shall be proportioned to the nature of the offense." This motion to quash was denied by the district court.

The State filed a motion in limine requesting an order precluding the defense from arguing, adducing evidence, or in any way commenting, during opening statement, cross-examination, direct examination, or closing argument, on the following; as such evidence constitutes hearsay, assumes facts not in evidence, is contrary to law, and would tend to mislead the jury.

1. That [the driver] made any statements regarding the ownership of the handgun found in the vehicle that . . . Pope . . . was traveling in unless or until [the driver] testifies in open court, under oath and subject to cross-examination.

2. That . . . Pope . . . be prohibited, should he elect to testify, from commenting or testifying about any statements made by [the driver], in particular any and all statements regarding the ownership of the handgun.

3. Further, if [Pope] intends to subpoena [the driver] to testify, the then State respectfully requests that a hearing be held pursuant to Neb. Rev. Stat. [§] 27-513(2) outside the presence of the jury to determine if [the driver] will assert his 5th [A]mendment privilege against self-incrimination if called to testify and if it is determined that he will that [the driver] not be allowed to appear before the jury as it would be prejudicial to the State.

The district court sustained the State's motion in limine.

JURY TRIAL

During the jury trial, evidence was adduced consistent with the facts as previously described. Additional evidence was adduced that DNA samples from Pope and the driver were obtained pursuant to a search warrant and were compared to DNA profiles found on the pistol, the magazine, and the rounds inside the magazine. There was a mixture of three individuals found on the pistol with Pope being the major contributor of the DNA and the driver being excluded as a major contributor. The mixture of DNA found on the pistol was 1 septillion (1 followed by 26 zeroes) more likely to have originated by Pope and two unknown unrelated individuals than if it had originated from three unknown, unrelated individuals. Both Pope and the driver were excluded as major contributors on the magazine and the rounds located inside the magazine. The defense did not present any evidence.

JURY VERDICT, ENHANCEMENT, AND SENTENCING

The jury found Pope guilty of possession of a firearm by a prohibited person and possession of marijuana, more than one pound. Following an enhancement hearing, Pope's conviction of possession of a firearm by a prohibited person was enhanced to a second offense. Thereafter, the district court sentenced Pope to 35 to 48 years' imprisonment for possession of a firearm by a prohibited person, subsequent offense, and sentenced him to 1 to 2 years' imprisonment for possession of marijuana, more than one pound. The sentences were ordered to run consecutively to each other and to any other sentence previously imposed on Pope. Additionally, Pope was given credit for 529 days served. Pope has timely appealed to this court and is represented by different counsel than represented him before the district court.

## ASSIGNMENTS OF ERROR

Pope's assignments of error, restated, are that (1) the district court erred in overruling his motions to suppress and motion to quash, and in sustaining the State's motion in limine; (2) the evidence was insufficient to support his conviction of possession of a firearm by a prohibited person, subsequent offense; (3) the sentences imposed were excessive; and (4) trial counsel "was ineffective in the general trial strategy." Brief for appellant at 7.

## STANDARD OF REVIEW

When reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. *State v. Garcia*, 302 Neb. 406, 923 N.W.2d 725 (2019). Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination. *Id*.

Regarding questions of law presented by a motion to quash or plea in abatement, an appellate court is obligated to reach a conclusion independent of the determinations reached by the trial court. *State v. Jedlicka*, 305 Neb. 52, 938 N.W.2d 854 (2020).

Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Cerros*, 312 Neb. 230, 978 N.W.2d 162 (2022); *State v. Pauly*, 311 Neb. 418, 972 N.W.2d 907 (2022).

A sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion. *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022).

Assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity. *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019).

## ANALYSIS

### ALLEGED ERRORS RELATED TO PRETRIAL MOTIONS

Pope's first assignment of error is that the district court erred in overruling his motions to suppress, overruling his motion to quash, and in sustaining the State's motion in limine. In its brief, the State argues:

> As an initial matter, the State questions whether this claim has been properly presented on appeal. As argued, Pope's brief sets forth the nature of these three motions and a general recitation of the parties' positions and the district court's rulings on the three motions, but this is the extent of his argument. He provides virtually no legal analysis on any of the three motions, nor any analysis on the court's rulings on the motions or why those rulings were supposedly wrong. Appellant's Brief at 14-17. Therefore, the State

questions whether this assignment of error has been sufficiently presented to this court. See *State v. Blake*, 310 Neb. 769, 800 (2022) (reiterating and explaining that "[w]here an appellants' brief contains conclusory assertions unsupported by a coherent analytical argument, the appellant fails to satisfy the requirement that the party asserting the alleged error must both specifically assign and specifically argue it in the party's initial brief. . . . An argument that does little more than restate an assignment of error does not support the assignment, and an appellate court will not address it.).

Brief for appellee at 18-19. We agree with the State. The entirety of the brief for appellant consists of statements regarding the nature of the motions to suppress, the motion to quash, and the State's motion in limine, and the parties' positions thereon; the district court's rulings on the three motions; and recitations of caselaw, but contains no analysis of why the district court erred in its rulings. Pope merely makes a conclusory statement that "[t]he District Court erred in overruling the defense's motions to suppress and motion to quash and sustaining the State's motion in limine." Brief for appellant at 17. This is insufficient to comply with our rules that "[a]lleged errors of the lower court must be both specifically assigned and specifically argued in the brief of the party asserting the errors to be considered by an appellate court." *State v. Lessley*, 312 Neb. 316, 326, 978 N.W.2d 620 (2022). Accordingly, we decline to consider Pope's first assignment of error.

We also note that regarding his motion to quash, Pope failed to comply with Neb. Ct. R. App. P. § 2-109(E) regarding his claim that the district court erred in overruling his motion to quash which alleged that the penalty for possession of a firearm by a prohibited person, if imposed, would be unconstitutional as applied to him. Section 2-109(E) mandates that a party presenting a case involving the federal or state constitutionality of a statute must file and serve notice thereof with the Supreme Court Clerk by separate written notice or in a petition to bypass at the time of filing such party's brief and provide the Attorney General with a copy of its brief if the Attorney General is not already a party to the case. *State v. Catlin*, 308 Neb. 294, 953 N.W.2d 563 (2021). A litigant must strictly comply with § 2-109(E) whenever the litigant challenges the constitutionality of a statute, regardless of how that constitutional challenge may be characterized. See *State v. Catlin, supra*. See, also, *State v. Boche*, 294 Neb. 912, 885 N.W.2d 523 (2016) (distinction between facial and as-applied constitutional challenges immaterial when it comes to § 2-109(E) notice). In this case, because Pope did not strictly comply with § 2-109(E) in that he did not provide a separate notice or a petition to bypass to the Supreme Court Clerk, this issue has not been preserved.

INSUFFICIENCY OF EVIDENCE

Pope next argues that the evidence was insufficient to support his conviction of possession of a firearm by a prohibited person, subsequent offense. Pope contends that the evidence was insufficient to establish that he was in possession of the firearm. We note that Pope does not dispute that the evidence was sufficient to find him guilty on the possession of marijuana charge. Likewise, he does not dispute the sufficiency of the evidence to support the enhancement of his conviction of possession of a firearm by a prohibited person. He only challenges the sufficiency of the evidence to support his guilt on the underlying offense of possession of a firearm by a prohibited person. Accordingly, we limit our consideration to this issue.

Neb. Rev. Stat. § 28-1206(1) (Cum. Supp. 2020), as relevant to this case, prohibits a person from possessing a firearm if he or she has previously been convicted of a felony. "Possession of a deadly weapon which is a firearm by a prohibited person is a Class ID felony for a first offense and a Class IB felony for a second or subsequent offense." § 28-1206(3)(b).

Possession of a firearm may be actual or constructive. See *State v. Warlick*, 308 Neb. 656, 956 N.W.2d 269 (2021). Actual possession is defined as including only those weapons on one's person or within one's immediate control, which is the area within which one might immediately gain possession of a weapon. *State v. Garza*, 256 Neb. 752, 592 N.W.2d 485 (1999). Constructive possession may be proved by mere ownership, dominion, or control over contraband itself, coupled with the intent to exercise control over the same. *State v. Warlick, supra.* The fact of possession may be proved by circumstantial evidence. *State v. Long*, 8 Neb. App. 353, 594 N.W.2d 310 (1999).

Here, the parties stipulated that Pope had previously been convicted of a felony. Thus, there is no dispute that, at the time of the offense, Pope had a prior felony conviction and was a prohibited person. The only disputed issue is whether the evidence was sufficient to find that Pope was in possession of the firearm. We find that the evidence on this issue was sufficient. The evidence, when viewed in the light most favorable to the State, established that, during a consensual search of the rental vehicle, a gun was located under the floorboard of the passenger seat. Pope was sitting in the passenger seat of the vehicle and Pope was found to be the major contributor of DNA found on the gun. When considered with Pope's statement that he made while he was located in the police cruiser and speaking to the driver regarding the subject of the firearm, we reject Pope's contention that there was insufficient evidence to convict him of the charge. This assignment of error fails.

EXCESSIVE SENTENCE

Third, Pope contends that the sentences imposed were excessive. Pope was convicted of possession of a firearm by a prohibited person, subsequent offense, a Class ID felony, and possession of marijuana, more than one pound, a Class IV felony. See, Neb. Rev. Stat. § 28-1206(1)(a) and (3)(b) (Cum. Supp. 2020); Neb. Rev. Stat. § 28-416(1) and (12) (Cum. Supp. 2020). Pope was sentenced to 36 to 50 years' imprisonment on the Class ID felony. This sentence is within the statutory sentencing range for Class ID felonies which are punishable by a mandatory minimum of 3 years' imprisonment and a maximum of 50 years' imprisonment. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2020).

Pope was sentenced to 1 to 2 years' imprisonment on the Class IV felony. This sentence was within the statutory sentencing range for Class IV felonies which are punishable by a minimum of no imprisonment and a maximum of 2 years' imprisonment followed by 12 months of post-release supervision and/or a $10,000 fine. Further, although conviction of a Class IV felony normally calls for a sentence of probation except in certain circumstances, because Pope's sentence was ordered to run consecutively to another felony conviction, the district court was not required to impose a sentence of probation in this case. See Neb. Rev. Stat. § 29-2204.02(2)(a) (Reissue 2016).

When sentences imposed within statutory limits are alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering well-established factors and any applicable legal principles. *State v. Blake*, 310 Neb. 769, 969

N.W.2d 399 (2022). A judicial abuse of discretion exists only when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id*.

When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. *Id*. The sentencing court is not limited to any mathematically applied set of factors, but the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id*.

At the time of the presentence investigation report, Pope was 27 years old, single with one dependent, and had received his GED. His criminal history included convictions for second degree burglary, escape, assault on peace officers and others, third degree burglary, voluntary absence or escape, voluntary absence from custody, attempted third degree burglary, possession of a weapon, possession of marijuana, and possession of a controlled substance (cannabidiol). Pope has a history of revocation on prior terms of probation and supervised release and was on federal supervised release at the time he committed the current offenses. The level of service/case management inventory assessed Pope as a very high risk to reoffend. Further, although Pope admitted to smoking marijuana almost every day, he did not believe that he had a drug problem. Pope further engaged in minimization or denial regarding his involvement in the current offenses stating "I was at the wrong place at the wrong time. I didn't know about a gun. I got thrown around due to (my) prior record. I got the short end of the stick."

Based upon factors including that the sentences imposed were within the relevant statutory sentencing ranges, Pope's very high risk to reoffend, his criminal history, his history of revocation on terms of probation and supervised release, that he was on supervised release at the time that he committed the current offenses, and his minimization or denial regarding his involvement in the current offense, the sentences imposed were not an abuse of discretion. This assignment of error fails.

INEFFECTIVE ASSISTANCE OF COUNSEL

Pope's final assignment of error is that trial counsel "was ineffective in the general trial strategy." Brief for appellant at 7.

Recently, in *State v. Drake*, 311 Neb. 219, 236-37, 971 N.W.2d 759, 774 (2022), the Nebraska Supreme Court set forth the directives that must be followed when addressing an ineffective assistance of counsel on direct appeal:

> When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the ineffective assistance of trial counsel issue will be procedurally barred.

> Once raised, an appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the

appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. Conversely, an ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing.

The necessary specificity of allegations of ineffective assistance of trial counsel on direct appeal for purposes of avoiding waiver requires, at a minimum, allegations of deficient performance described with enough particularity for an appellate court to make a determination of whether the claim can be decided upon the trial record and also for a district court later reviewing a potential petition for postconviction relief to be able to recognize whether the claim was brought before an appellate court. Assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity.

When a claim of ineffective assistance of trial counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *State v. Devers*, 306 Neb. 429, 945 N.W.2d 470 (2020). General allegations that trial counsel performed deficiently or that trial counsel was ineffective are insufficient to raise an ineffective assistance claim on direct appeal. *State v. Weathers*, 304 Neb. 402, 935 N.W.2d 185 (2019). In order to know whether the record is insufficient to address assertions on direct appeal that trial counsel was ineffective, appellate counsel must assign and argue deficiency with enough particularity (1) for an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) for a district court later reviewing a petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court. *State v. Devers, supra.*

For example, the Nebraska Supreme Court has found that an error assigning that trial counsel was ineffective in "'fail[ing] to adequately investigate [the defendant's] defenses'" lacked the specificity we demand on direct appeal. *State v. Mrza*, 302 Neb. 931, 935, 926 N.W.2d 79, 86 (2019). Likewise, the Supreme Court recently held that an error assigning that trial counsel was ineffective in "'Failing to Investigate the Case Fully'" lacked the requisite specificity as to what component of investigation counsel was allegedly deficient in failing to conduct. *State v. Wood*, 310 Neb. 391, 436, 966 N.W.2d 825, 858 (2021). Similarly, this court has held that an error assigning that trial counsel was ineffective in "'failing to investigate the case and in limiting [his] defense'" which did not specifically identify which aspects of the case trial counsel allegedly failed to investigate or in what manner counsel limited his defense was insufficiently pled. *State v. Santos-Romero*, 31 Neb. App. 14, 19, 974 N.W.2d 624, 628 (2022).

Here, Pope has assigned as error that his trial counsel "was ineffective in the general trial strategy." Brief for appellant at 7. Pope's alleged error makes no specific allegations of the conduct that he claims constitutes deficient performance by trial counsel and is nothing more than a placeholder. This general allegation which does not direct this court to any claims regarding specific deficiencies of trial counsel's actions or inactions is insufficiently pled. Therefore, we do not address his claim.

CONCLUSION

Having considered Pope's assignments of error and found them to be insufficiently preserved or without merit, we affirm his convictions and sentences.

AFFIRMED.