IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. HUNDLEY

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,
V.
DEBORAH J. HUNDLEY, APPELLANT.

Filed November 7, 2023.    No. A-23-348.

Appeal from the District Court for Lancaster County: JOHN A. COLBORN, Judge. Affirmed.

Kristi J. Egger, Lancaster County Public Defender, and Brittani E. Lewit for appellant.

Michael T. Hilgers, Attorney General, and P. Christian Adamski for appellee.

PIRTLE, Chief Judge, and MOORE and RIEDMANN, Judges.

PIRTLE, Chief Judge.

## I. INTRODUCTION

Deborah J. Hundley bonded into DUI court following a no-contest plea to driving under the influence (DUI) with a blood-alcohol level of .15 or higher and refusing to submit to a chemical test. After finding that she violated multiple conditions of her bond, the district court for Lancaster County terminated her from DUI court and sentenced her to 365 days' imprisonment and 12 months' post-release supervision on each count to be served concurrently.

She now appeals the sentences imposed following her termination from DUI court, alleging they are excessive, and contends that she received ineffective assistance of trial counsel. Upon our review, we affirm the convictions and sentences.

## II. BACKGROUND

On September 14, 2022, Hundley was charged with two Class IIIA felonies for DUI with a blood-alcohol level of .15 or higher and for refusing to submit to a chemical breath test. Prior to these charges, Hundley had two prior DUI convictions from June 14, 2012, and July 16, 2019. On September 27, 2022, she pled no contest to both charges and bonded into DUI court.

As a participant in DUI court, Hundley had to abide by various conditions. These included submitting to chemical tests, abstaining from the possession and use of alcohol, refraining from unlawful or disorderly conduct, attending required treatment and counseling and being honest at all times. Additionally, Hundley's driver's license was revoked throughout the term of her participation in DUI court. She could have recovered her driving privileges by applying for an ignition interlock permit, which would have allowed her to drive as long as there was an ignition interlock system in her vehicle. However, she never applied for the permit.

While participating in the program, Hundley drove on several occasions which she later denied when confronted about it. On one of these occasions, she was involved in a traffic stop and arrested which constituted a new criminal offense. As a result of these multiple violations, the DUI court team recommended that she be terminated from DUI court.

On March 16, 2023, a hearing was held to determine whether she would be allowed to continue in DUI court. Erminda Millian-Groves and Jordan Boies testified for the State and Hundley testified in her own defense. Millian-Groves and Boies are both involved with the DUI treatment court. Millian-Groves is employed by the State of Nebraska Probation Department as a problem-solving coordinator. Boies is also a problem-solving coordinator and is employed by Lancaster County Adult Probation. Their testimony overviewed the requirements of DUI court as well as Hundley's continued violations. After being told the importance of not driving with a revoked license and without an ignition interlock permit while in the program, Hundley violated these conditions four times. In December 2022, she violated the driving restrictions and was sanctioned to a 48-hour jail sentence as a result. On February 2, 2023, she was seen driving to and from a Verizon store by a Lancaster County Probation Drug Technician who recognized her. On February 11, the same drug technician saw her driving to and from the drug testing facility. Notably, on this occasion, she attempted to hide her driving by parking a block away. Then on February 14, she was involved in a traffic stop and arrested after the officer discovered her license was revoked. When confronted about her driving by the DUI Court treatment team, Hundley was dishonest and attempted to hide the truth.

At the hearing, Hundley admitted that she drove on those four occasions and had been dishonest with her probation officers. She also recognized the significance of her actions. She expressed her desire to remain in DUI court and promised to refrain from driving and to be honest if she was allowed to continue in the program.

The district court ultimately decided to terminate Hundley from DUI court. It found that she had violated the conditions of her bond by driving illegally four times and being dishonest. It reasoned that because Hundley "demonstrated [a] willingness to violate those laws when clearly aware of the consequences for doing so," the only appropriate consequence was termination from the program.

Hundley's sentencing hearing was held on April 25, 2023. A drug and alcohol evaluation was completed and attached to the presentence investigation report (PSI). At the hearing, Hundley's attorney acknowledged that both the drug and alcohol evaluation and remaining portions of the PSI contained errors. It appeared that some of the information within Hundley's drug and alcohol evaluation got mixed with another participant's evaluation. Her attorney stated that Hundley had already corrected most of the errors, but there were still some remaining. He proceeded to correct the erroneous information on the record. After being asked by the court,

Hundley expressed that she had an opportunity to review the PSI and had no other additions or corrections to make.

The court sentenced Hundley to 365 days' imprisonment for count I, and 365 days' imprisonment for count II. These sentences were to be served concurrently and she was given credit for 72 days already served. Additionally, she was given 12 months of post-release supervision on each count to be served concurrently. Further, the court ordered that, upon release from custody, Hundley's driver's license would be revoked for a period of 15 years with credit for any administrative license revocation period. However, upon her release from incarceration and after 180 days of her license being revoked, she may seek and maintain a license that will allow her to operate a motor vehicle with an ignition interlock device installed.

## III. ASSIGNMENTS OF ERROR

Hundley assigns, restated and reordered, that (1) the district court erred in imposing an excessive sentence; and (2) she received ineffective assistance of trial counsel because her trial counsel (a) failed to give her a sufficient opportunity to review her drug and alcohol evaluation and PSI; (b) failed to correct the errors within the evaluation and PSI at sentencing and advised her to proceed with sentencing without making any comments to the sentencing court about the misinformation; (c) failed to sequester witnesses at her termination hearing; and (d) initially informed her there would be no plea offers made in her case and encouraged her to plead and participate in DUI court, which prohibited her from seeking a plea deal where one of her charges could have been reduced or dismissed.

## IV. STANDARD OF REVIEW

A sentence imposed within the statutory limits will not be disturbed absent an abuse of discretion. *State v. Abligo*, 312 Neb. 74, 978 N.W.2d 42 (2022). An abuse of discretion occurs when a trial court's decision is based upon reasons or rulings that are untenable or unreasonable or if its action is clearly against conscience, reason, and evidence. *Id.*

The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved on direct appeal; the determining factor is whether the record is sufficient to adequately review the question. *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022). The record is sufficient to resolve a claim of ineffective assistance of counsel on direct appeal if the record affirmatively proves or rebuts either deficiency or prejudice with respect to the defendant's claims. *Id.*

## V. ANALYSIS

### 1. Excessive Sentence

Hundley assigns the district court's sentences were excessive. Hundley asserts that in fashioning her sentences, the district court "failed to consider [her] mentality and the fact that incarceration entails excessive hardship to [her] dependents." Brief for appellant at 26. She argues that her incarceration is unnecessary for the protection of the public because she had been sober for more than a year, took accountability for her actions, and demonstrated remorse. She also claims the district court failed to consider the financial impacts her three children would face without her there to provide for them.

It is not the function of an appellate court to conduct a de novo review and a reweighing of the sentencing factors in the record. *State v. Starks*, 308 Neb. 527, 955 N.W.2d 313 (2021). A sentence imposed within the statutory limits will not be disturbed absent an abuse of discretion. *State v. Abligo, supra*. An abuse of discretion occurs when a trial court's decision is based upon reasons or rulings that are untenable or unreasonable or if its action is clearly against conscience, reason, and evidence. *Id.*

When imposing a sentence, a sentencing judge should customarily consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *State v Blake, supra.* The sentencing court is not limited to any mathematically applied set of factors, but the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Hundley pled no contest to two Class IIIA felonies. Pursuant to Neb. Rev. Stat. § 28-105 (Cum. Supp. 2022), Class IIIA felonies carry the maximum possible penalty of 3 years' imprisonment and 18 months' post-release supervision or a $10,000 fine, or both. There is no minimum term of imprisonment, but if imprisonment is imposed there is a minimum term of 9 months' post-release supervision. § 28-105. The court sentenced Hundley to 365 days' imprisonment and 12 months' post-release supervision on each count. The sentences imposed by the court were within statutory limits, so we must only determine whether the court abused its discretion in establishing the sentences.

Prior to levying Hundley's sentences, she and her attorney were given the opportunity to address the court. While her attorney acknowledged her failure to abide by the requirements of DUI court, he explained the program had a positive impact on her. Specifically, she was placed on the program's honor roll several times, remained sober throughout her participation, and developed a relationship with her probation officer. Hundley then apologized for her conduct and took full responsibility for her choice to drink and drive. She recognized the risks she posed to herself and others by deciding to drink and drive and explained how she had changed since her arrest. She described that she had been sober for just over a year, was attending AA meetings, and had participated in outpatient treatment.

In sentencing Hundley, the district court acknowledged the various factors it considered in determining appropriate sentences. These included the comments from Hundley and her attorney and the information within the PSI. The court recognized that DUI court is the highest form of supervision available, and that Hundley was unable to abide by its requirements. It then prefaced its sentences by stating:

Having regard for the nature and circumstances of the crimes and the history, character, and condition of [Hundley], the court finds that imprisonment of [Hundley] is necessary for the protection of the public, because risk is substantial that during any period of probation [Hundley] would engage in additional criminal conduct, and because a lesser sentence would depreciate the seriousness of [Hundley's] crimes and promote disrespect for the law.

- 4 -

We conclude that the district court's reasoning was not clearly untenable and did not deprive Hundley of a substantial right or just result. This was Hundley's third DUI conviction. While she demonstrated perseverance in abstaining from alcohol for over a year, she showed an inability to abstain from driving while participating in DUI court. The district court was presented with information about Hundley's mental state and the effects her incarceration would have on her children. It stated that it took this information into account when fashioning her sentences and proceeded to levy sentences within the statutory guidelines. The court determined imprisonment was necessary for the protection of the public and because lesser sentences would depreciate the seriousness of her crimes and promote disrespect for the law. On this record, we find no abuse of discretion in the nature or length of the sentences imposed. Accordingly, the aggregate sentence of 365 days' imprisonment with 12 months of post-release supervision was not an abuse of discretion, and we affirm Hundley's sentences on both counts.

## 2. INEFFECTIVE ASSISTANCE OF COUNSEL

Hundley assigns that her trial counsel was ineffective in numerous ways. Specifically she assigns her trial counsel (1) did not give her an opportunity to review the drug and alcohol evaluation and PSI, both of which contained erroneous information; (2) failed to correct the erroneous information within the reports and advised her to proceed with sentencing without making any comments to the sentencing court about the misinformation; (3) failed to sequester the witnesses at her termination hearing; and (4) improperly informed her that there would be no plea offers in her case so neither charge could be reduced or dismissed and encouraged her to participate in DUI court.

When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. *State v. Avina-Murillo*, 301 Neb. 185, 917 N.W.2d 865 (2018). Otherwise, the issue will be procedurally barred. *Id.* In other words, the fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *Id.* The determining factor is whether the record is sufficient to adequately review the question. *Id.*

Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Avina-Murillo, supra.* To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

Thus, in reviewing Hundley's claims of ineffective assistance of counsel on direct appeal, we decide only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

## (a) PSI

We begin by addressing Hundley's assignments concerning the drug and alcohol evaluation and the PSI. Hundley assigns there are numerous errors within both reports and that her trial counsel did not provide her an opportunity to review them. Further, she also assigns her trial counsel failed to correct the errors at the sentencing hearing and advised her to proceed with sentencing without informing the court of the reports' inaccuracies.

A defendant has a qualified right to review his or her PSI, and the defendant may, with his or her attorney, examine the PSI subject to the court's supervision. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019). A defendant waives his or her qualified right to review the PSI by not notifying the trial court that he or she has not personally reviewed the report and that he or she wishes to do so. *Id.*

As her trial counsel indicated at the sentencing hearing, it appears that Hundley's information was confused with another participant's report when the drug and alcohol evaluation was drafted. Specifically, the evaluation refers to Hundley several times as "he" and "his" instead of "she" and "her," indicates that she had only lived at her residence for 6 months instead of the correct 18 months, misidentifies that she had broken her sobriety 12 months prior, and incorrectly reports she had last attended treatment 3 years ago. The evaluation also misstates that she had been single for 19 years instead of the correct 9 years, and that she did not have good relationships with her mother, brothers, and sisters. Hundley asserts she never told the evaluator that she had a negative relationship with her family, and in fact, has a good relationship with them.

Regarding the remaining portions of the PSI, Hundley does not point to any factual errors, but takes issue with several of the report's conclusions regarding her risk for recidivism, character, and the quality of her relationships. Specifically, she takes issue with the PSI finding that she is a "Very High" risk for a "Procriminal Attitude," "has a lack of pro-social companions," and maintains an "association with criminal others." She also disagrees with the assessment's findings that she struggles with "impulse control, asking for help, prioritizing, taking care of responsibilities, making appropriate decisions, managing finances, self-direction, independent decision making, problems with authority, and a history of violence." She asserts these conclusions do not accurately reflect her relationships with her family and fail to account for the changes she has made in her life.

At the sentencing hearing, Hundley's counsel brought some of these errors to the court's attention. In doing so, he stated that Hundley had corrected most of the errors in the reports, but there were still some issues. However, the only specific correction he made was to clarify that she had been sober for more than a year. He then briefly explained the evaluation "talks about a moderate to severe alcohol use continuing despite interpersonal problems and that type of thing" and how "that was a part that may be included in the first draft that maybe wouldn't be important. But the general gist of it is that that would be consistent with other parts of that evaluation." After her counsel indicated he had no further corrections, the court questioned Hundley and the following colloquy occurred:

> THE COURT: All right. Thank you. Ms. Hundley, have you had an opportunity to go over the [PSI] with your attorney?
>
> [HUNDLEY]: Yes, Your Honor.

THE COURT: Are there any other additions or corrections that need to be made?
[HUNDLEY]: No, I don't believe so, Your Honor.

Hundley assigns that her counsel failed to provide her an opportunity to review the drug and alcohol evaluation and PSI. However, the portion of the record cited above clearly refutes this assertion. When asked by the court whether she had an opportunity to go over the PSI with her attorney, Hundley responded affirmatively. As the drug and alcohol evaluation was included in the PSI, her own statement refutes the claim that her counsel failed to provide her an opportunity to review the evaluation and PSI. As such, we find the record is sufficient to review this assignment and we conclude the record affirmatively rebuts Hundley's claim.

We next conclude the record is insufficient to review Hundley's assignment that her attorney failed to correct the erroneous information in the evaluation and PSI and advised her to not inform the court about the erroneous information. Hundley argues that she told her attorney prior to the sentencing hearing that she wanted to request a continuance or complete another alcohol and drug evaluation due to the numerous errors within the reports. She further states her attorney advised her to proceed with sentencing and to not inform the court about the incorrect information. These discussions are not in the record before us.

In *State v. Moyer*, 271 Neb. 776, 715 N.W.2d 565 (2006), the Nebraska Supreme Court was faced with a similar ineffective assistance of counsel claim involving conversations between counsel and defendant regarding the PSI. The defendant asserted his trial counsel was ineffective because his counsel failed to disclose the contents of the PSI. *Id.* The Supreme Court first noted that the defendant waived his right to challenge the PSI on appeal by stating at his sentencing hearing that he had an opportunity to discuss the PSI with his attorney. *Id.* However, the court recognized the defendant was not challenging the report itself. *Id.* Instead, the question before the court concerned trial counsel's failure to disclose the contents of the PSI to the defendant prior to sentencing. *Id.* Because the conversations between counsel and defendant concerning the contents of the PSI were not in the record, the court concluded the record was insufficient to address the defendant's claim.

As in *Moyer*, the ineffective assistance of counsel claim in the present case is based upon alleged conversations with counsel that are not in the record. Specifically, the record lacks any discussion between Hundley and her attorney about the alleged advice that Hundley not inform the court of the erroneous information contained within the drug and alcohol evaluation and PSI. While Hundley provides a framework for these purported conversations in her brief, these alleged discussions are not in the record. We conclude that without the benefit of a record concerning these allegations, the record is insufficient to address this assignment of error on direct appeal.

Therefore, we find that the record refutes Hundley's assignment that she did not have an opportunity to review her drug and alcohol evaluation and PSI, but the record is insufficient to review her assignment that her attorney failed to correct the erroneous information in the evaluation and PSI and advised her to not bring the erroneous information to the court's attention.

(b) Sequestration of Witnesses

Hundley assigns her trial counsel was ineffective because he did not move to sequester Millian-Groves and Boies at the termination hearing. She asserts the information provided by

Millian-Groves and Boies was very similar, and it is unknown if being sequestered would have changed their testimony.

Millian-Groves' testimony included an overview of the requirements of DUI court, the resources provided to its participants, and her experience supervising Hundley. Because her license was revoked, Hundley was not able to drive and was subject to sanctions if she was caught driving. Millian-Groves indicated that Hundley was aware of this restriction. She explained that to help participants get to the required drug testing, they are offered Uber gift cards and bus passes. These resources were available to Hundley. However, despite the restriction on driving and resources offered to help participants get around, Hundley was observed driving four separate times. Based on these infractions, Millian-Groves recommended Hundley be terminated from the DUI court program.

Boies' testimony was much shorter. He explained that he met with Hundley on a weekly basis and had informed her about the importance of not driving while participating in DUI court. He essentially confirmed Millian-Groves' testimony that Hundley understood that she could not drive and had certain resources available to her to help her get around. Despite this, she chose to drive several times.

When Hundley testified, she admitted to driving numerous times while participating in DUI court. She admitted to driving in December 2022 and three times in February 2023. She also recognized that she had been dishonest and that was something she could not do while in the program. She also recognized that it was a "big deal" for her to drive illegally and that she knew she could be terminated from the program for doing so.

We first conclude that the record is sufficient to rule on this assignment of error on direct appeal. Next, we find that Hundley was not prejudiced by the State's witnesses not being sequestered. Hundley's assignment relies upon the similarity of the witnesses' testimony but ignores their analogous roles on the DUI court team as problem-solving coordinators. Considering their similar roles in supervising Hundley, it is not clear how different their testimony would have been if they had been sequestered. They were both aware of her multiple infractions and that she was dishonest when confronted about driving. More so, they were both able to testify that Hundley was aware of the program's conditions and available resources. This is not surprising given their roles. Therefore, we cannot say there is a reasonable probability the outcome of the proceeding would be different if they had been sequestered.

Further, Hundley's testimony provided the material information that the district court relied upon in terminating her from DUI court. The district court articulated that it was terminating Hundley from DUI court because of her inability to cease driving and her dishonesty when confronted by her probation officers. Hundley admitted to this conduct in her own testimony. Based on this alone, there is not a reasonable probability that sequestering the State's witnesses would have changed the proceeding's outcome. Hundley admitted to driving several times when she knew she was not supposed to and that she was dishonest with her probation officers when confronted about it. Because Hundley was an independent source for the evidence material to the court's decision, sequestering the witnesses would not have changed the outcome of the proceeding. As such, Hundley's trial counsel's failure to sequester the witnesses did not prejudice her defense.

### (c) Encouragement to Plead and Participate in DUI Court

Hundley next assigns that her trial counsel was ineffective when he informed her that there would be no plea offers in her case so neither charge could be reduced or dismissed and encouraged her to participate in DUI court. She claims that based on this advice, she enrolled in the program and pled no contest to the two Class IIIA felonies on which she was later convicted and sentenced.

However, it was not until her sentencing hearing that she discovered a plea agreement may have been offered had she not participated in DUI court. At the sentencing hearing, her attorney stated that if this had "been a situation where she was going to not have a trial but enter a plea, I'm pretty certain this would have been a situation where one count would have been dismissed in exchange for her guilty or no contest plea to the other count." Based on this, she now contends that her trial counsel failed to originally inform her of all her options at the outset of her case. As a result, she suffered prejudice because her enrollment in—and eventual termination from—DUI court led to her being sentenced on two felony convictions when one of those charges may have otherwise been reduced or dismissed as part of a plea agreement.

We find that this argument is flawed because it is based on several unfounded speculations. First, Hundley asserts that if she did not enroll in DUI court, she would have received a plea agreement. Second, she posits that this plea agreement would entail one of her charges being reduced or dismissed. Third, without having any information as to what this hypothetical plea agreement would involve, she believes she would have accepted it. Finally, again without any information as to the terms of the agreement, she asserts that the plea agreement would have left her in a better position at sentencing.

As none of this occurred, it is impossible to know what options would have been available to Hundley if she did not enroll in DUI court. Likewise, it is impossible to know what actions she would have taken in response to those options. As such, this assignment is based solely on speculation. As the Supreme Court has stated, "we will not presume prejudice based on mere speculation." *State v. Sandoval*, 280 Neb. 309, 324, 788 N.W.2d 172, 194 (2010).

Moreover, we find the record is sufficient to determine that her defense was not prejudiced by her trial counsel purportedly encouraging her to participate in DUI court after informing her that there would be no plea offers in her case. The record refutes Hundley's assertion that she would have entered into a plea agreement because she indicated in her testimony that she wanted to enter into DUI court. She testified about how she valued the services offered to her through the program, enjoyed the ability to go about her daily life, and needed the program to ensure that she stayed away from alcohol and had a good future. Accordingly, we find that her counsel allegedly encouraging her to participate in DUI court after informing her that there would be no plea offers in her case did not prejudice her defense.

### VI. CONCLUSION

We conclude the district court did not abuse its discretion in the sentences it imposed. We also conclude that the record refutes Hundley's first claim of ineffective assistance and is insufficient to address her second claim of ineffective assistance on direct appeal. Further, we find that Hundley's third and fourth claims of ineffective assistance did not prejudice her defense. Accordingly, we affirm Hundley's convictions and sentences.

AFFIRMED.